**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------
Mary Lowry RN (identified in the challenged administrative
subpoena as Mary Murphy and further identified as a/k/a
Mary McPhail),

|  |  |
|---|---|
| Plaintiff | Case No.: |
| -against- | **COMPLAINT FOR PRE** |
| | **COMPLIANCE JUDICIAL** |
| Michael Mc. Donald MD in his official | **REVIEW OF ADMINISTRATVE** |
| capacity as Commissioner of the New | **SUBPOENA AND** |
| York State Department of Health; Joseph | **DECLARATORY JUDGMENT** |
| A. Giovannetti Esq, in his official capacity | **PURSUANT TO 28 USC §2201** |
| as  Director of Bureau of Investigations | **ET. SEQ; PRELIMINARY** |
| New York State Department of Health | **INJUNCTION PURSUANT TO** |
| | FRCP SEC.65 **AND PERMANENT** |
| | **INJUNCTION PURSUANT TO** |
| Defendants | **42 USC §1983** |

-----------------------------------------------------------------------X

COMES NOW Mary Lowry who is  identified by the defendants  in the administrative

subpoena as a/ka/ Mary Murphy and further identified as a/k/a Mary McPhail, and complains about

the defendants as follows:

## IDENTITY OF THE PARTIES

1.      Plaintiff ("Plaintiff")  Mary Lowry, who is  identified in the challenged

administrative  subpoena by the defendants   as a/k/a Mary Murphy and further identified as a/k/a

Mary McPhail, is and at all of the relevant times hereinabove and hereinafter mentioned was a

registered nurse licensed by the New York Department of Education to Education Office of the

Professions to practice the profession of Nursing in New York.

2.      At all of the times hereinabove and hereinafter mentioned the Plaintiff worked and

sill works in her capacity as a pediatric nurse in the medical offices of Mark Nesselson MD located

at 146 W 95th St New York, NY 10025.

1

3.      At all of the relevant times hereinabove and hereinafter mentioned, the Defendant James McDonald MD ("McDonald") was and still is the Commissioner, appointed state official and head executive officer of  the  New York Department of Health ("DOH").

4.      At all of the times hereinabove and hereinafter mentioned  McDonald maintained and still maintains a principal place of business at NYS Department of Health, Corning Tower, 24th Floor, Albany, NY 12237 and in the principal regional office of the DOH  located at 90 Church Street 4th Floor, New York NY 10007 in the county and City of New York.

5.      Defendant McDonald is sued herein in his official capacity because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a preliminary injunction aimed at enjoining defendants' prospective enforcement of an administrative subpoena which violates the Fourth Amendment; (b) prospective permanent injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint aimed at enjoining defendants' prospective violations of Plaintiff's constitutional rights safeguarded by the Fourth Amendments; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the defendant  state official and agents as set forth in this Complaint.

6.      At all of the relevant times hereinabove and hereinafter mentioned, the Defendant Joseph Giovannetti ("Giovannetti") was and still is an investigator and the Director of the Bureau of Investigations of the  DOH. Mr. Giovanetti is sued herein in his official capacity as an appointed administrative official in the position described above.

7.      At all of the times hereinabove and hereinafter mentioned  Defendant Giovannetti maintained and still maintains a principal place of business in the regional office of the  DOH located at 90 Church Street, 4th Floor, New York, NY 10007 and a principal place of business c/o

2

NYS Department of Health, Corning Tower, Room 2438 Albany, NY 12237.

7.      Giovannetti is sued herein in his official capacity as an investigator of the DOH because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a preliminary injunction aimed at enjoining defendants' prospective enforcement of an administrative subpoena which violates the Fourth Amendment; (b) prospective permanent injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint aimed at enjoining defendants' prospective violations of Plaintiff's constitutional rights safeguarded by the Fourth Amendments; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the defendant  state official and agents as set forth in this Complaint.

8.      The defendants McDonald and  Giovanetti, shall be collectively referred hereinafter as the "state defendants".

## JURISDCTION

9.      The United States District Court for the Southern District of New York has subject matter federal question jurisdiction over this matter because pursuant to 28 U.S.C. § 1331, because the claims set forth herein arise under the Constitution and statutes of the United States, namely the Fourth Amendment of the US Constitution and 42 USC §1983.

## VENUE

10.     Pursuant to Fed. R. Civ. Proc 1391(b)(1) venue is properly based in the Southern District of New York because the defendants maintain a principal place of business at in the county of New York which is within the territorial venue of the Southern District of New York.

11.     Pursuant to Fed. R. Civ. Proc 1391(b)(2)  venue is properly based in the Southern

District of New York because a substantial part of the events or omissions giving rise to the claim occurred in the City and County of New York.

12.    Both the residence of the defendants McDonald, Giovanetti, and the place where a substantial part of the events giving rise to this action occurred in New York County New York which are within the territorial judicial district of the Southern District of New York.

<strong><u>RELEVANT FACTS</u></strong>

**(i)      In General.**

13.    On or about January 25, 2025 a state investigator from the New York State department of Health came to Plaintiff's home located at 24 Crestmont Avenue, Yonkers, NY 10704 and served the attached subpoena. See EX A annexed hereto.

14.    The subpoena  is signed and issued by the Department of health Chief investigator Joseph Giovannetti.

15.    The text of the subpoena purports to be issued pursuant to the authority of New York Public health Law Sec. 206(4(a) and Sec. 12-a(1).

16.    The subpoena is titled "In re: Mark Nesselson MD Investigation No. DOH 0885".

17.    The subpoena commands the Plaintiff to appear of February 4, 2026 at the DOH offices   at 90 Church Street to testify before representatives of the Commissioner of health regarding investigation of violations of Article 21 of the Public health Law by Mark Nesselson MD. O

18.    On February 2, 2026 Plaintiff's counsel wrote to Mr. Giovannetti objecting to the subpoena and alerting Mr. Giovannetti that this complaint will be filed. Mr. Giovannetti acknowledged receipt of the objection and of the notice of intended filing.

(i)     **<u>Legal grounds exist for challenging the administrative witness subpoena.</u>**

19.     The following legal grounds for the challenge of the subpoena: (a) the subpoena was not issued in aid of a bona fide investigation and it is not authorized by any statutory provision; (b) the subpoena violates the Fourth Amendment because it seeks to use the investigative process and the compulsory process to harass and intimidate the Plaintiff as an employee of Dr. Nesselson's practice; (c) the subpoena violates the Fourth Amendment because it is issued by an investigator; (d) the statutes cited in the subpoena as the predicate authority for the issuance of the subpoena are unconstitutional as applied.

20.     Each one of the foregoing grounds for this action will be discussed seriatim.

(a)     **The subpoena violates the Fourth Amendment because
it is not authorized by statute and it is issued by and
<u>investigator.</u>**

21.     In general administrative investigative subpoenas are governed by the Fourth Amendment.

22.     Constitutional law imposes limitations on administrative investigations. The limitations that are placed on administrative investigations are that the agency may not act arbitrarily or in excess of its statutory authority. The defendants' investigation of the matter requested may not be of such a sweeping nature and so unrelated to the matter under inquiry as to exceed their investigatory power.

23.     The subpoena purported two things: (a) it is issued pursuant to the authority   PHL Sec. 206(4)(a) and 12-a(1) it is investigating "violations of Article 21 of Dr Nesselson.

24.     Neither one of those representations are correct. Neither PHL Sec. 206(4)(a) nor 12-a(1)   authorize the use of this subpoena for the reasons articulated below. In addition the

5

defendants by definition cannot investigate Dr. Nesselson's violations of Article 21 of the Public Health Law because or all of the reasons articulated below and in a pending litigation by Dr. Nesselson against these defendants - EX B hereto, none exist.

25.     Public Health Law ("PHL") Sec. 206  in general vests powers in the Commissioner. Public health Law 206(1)(f) empowers the Commissioner to enforce the Public health law/

26.     Public Health law Sec. 206(4)(a) empowers the Commissioner to issue subpoenas, issue subpoenas, **compel the attendance of witnesses and compel them to testify in any matter or proceeding before him**, and may also require a witness to attend and give testimony in a county where he resides or has a place of business without the payment of any fees.( Emphasis supplied).

27.     In this case there are no matters of proceedings pending against Dr. Nesselson before the commissioner.

28.     To the contrary, as set forth below, in the existing litigation titled *Nesselson v. James Mc. Donald M.D. and Joseph Giovannetti* SDNY case number 1:25-cv-04464 JLR - EX B hereto - the core of the constitutional issues before Judge Jennifer Rochon is the fact that no proceedings were ever instituted before the Commissioner in connection with allegations and accusations of violations of PHL Sec. 21 and certainly none exist now.

29.     In addition, PHL Sec 206(a)(4) provides nothing about the issuance of subpoenas for investigations by the Commissioner. That statute speaks only about the Commissioner's powers to  compel  attendance of witnesses in any matter or proceeding before the Commissioner. Since neither the Commissioner not anyone else ever provided Dr. Nesselson with notice or opportunity to be heard with respect to any matter or proceeding before the commissioner, PHL Sec 206(a)(4) does not provide any authority for the issuance of this subpoena at all by anyone.

30.     Moreover the subpoena was not issued by the Commissioner, but by Mr. Giovanetti, an investigator of the DOH in the name of the Commissioner. See Ex A hereto.

31.     PHL Sec 206(a)(4) provides no authority for an investigator of the DOH to issue an administrative subpoena in lieu of the Commissioner. Nor can it. An administrative subpoena cannot be issued by an agency investigator because such issuance violates the Fourth Amendment of the Constitution.

32.     The administrative subpoena has to provide the safeguards of a warrant. Namely some impartial administrative official other than the investigator in the field (in this case Mr. Giovanetti who engineered and spearheaded the case against Dr. Nesselson - EX B hereto) has to sign off on the subpoena in order for the same to meet the minimum requirements of the Fourth Amendment.

33.     Finally, PHL Sec 206(a)(4) does empower the Commissioner to delegate the subpoena making powers to anyone and it certainly does not authorize the issuance of the subpoena by Mr. Giovannetti, a NYS DOH investigator.

34.     In order to be compliant with the Fourth Amendment,  the subpoena must be authorized by statute. Because there are no proceedings or any formal matters before the Commissioner and none ever existed, See EX B hereto, PHL Sec 206(a)(4) does not vest the defendants herein with any powers to issues subpoenas purporting to investigate Dr. Nesselson's violation of Article 21 of the Public Health Law. The defendants already acted and continue to act extrajudicially against Dr. Nesselson without any such formal proceedings ever existing before the commissioner. See EX B annexed hereto.

35.     Next PHL Sec. 12-a(1) also provides no authority for the issuance of the subpoena in its existent form.

36.     This statute provides that "[t]he commissioner, or any person designated by him for this purpose, may issue subpoenas and administer oaths in connection with any hearing or investigation under or pursuant to this chapter, and it shall be the duty of the commissioner and any persons designated by him for such purpose to issue subpoenas at the request of and upon behalf of the respondent.

37.     Facially, PHL Sec. 12-a seems to give the commissioner and anyone designated by him the authority to issue subpoenas in connection with investigations regarding violations of the Public Health Law which the Commissioner has the authority to enforce pursuant to PHL Sec. 206(1)(f) and pursuant to the formalities of PHL Sec. 12-a.

38.     However this statute does not give the commissioner the power to violate the Fourth Amendment by delegating the subpoena making power to any investigator of the DOH because such investigators cannot issue subpoenas without violating the Fourth Amendment.

39.     Moreover, as discussed below and in the accompanying litigation EX B hereto, neither one of the defendants are investigating Dr. Nesselson's alleged violations of Public Health Law Article 21 because by statutory definitions and provisions no such violations exist within the set of facts pertaining to Dr. Nesselson's actions as set forth in EX B hereto.

40.     Because the Commissioner and Mr. Giovannetti are not and cannot by definition, as set forth below, investigate violations of Chapter 21 which do not exist, the subpoena violates the Fourth Amendment because it is not authorized by statute.

41.     In this case because no violations of PHL Chapter 21 or formal proceedings before the commissioner exist and these issues are pending before Judge Rochon, and because Mr. Giovannetti, a state investigator signed off on the subpoena, the subpoenas not authorized to be issued either by PHL Sec. 12-a(1) or by PHL Sec. 206(a)(a).

**(b)    The subpoena is not issued in aid of any issues
relevant to any bona fide investigation of alleged
violations of Chapter 21 of the PHL by Dr. Nesselson
<u>because no such violations exist</u>.**

42.    Reference is hereby made to EX B annexed hereto. The annexed documents in the pending litigation between Dr. Nesselson and the defendants herein explain why the defendant are not and cannot possibly investigate any violation of Article 21 of the PHL by Dr. Nesselson.

43.    Specifically, as set forth in the attached documentation, the issue and legal fiction which was concocted and engineered by the defendants herein in collaboration and conspiracy with the New York City Department of Health and Mental Hygiene ("DHMH") officials to violate Plaintiff's due process rights was Plaintiff's compliance with the vaccine reporting requirements of PHL Sec. 2168.

44.    Specifically, as it can be seen from EX B hereto, PHL Sec. 2168 imposes a mandatory duty upon Dr. Nesselson to report (in his case) to the New York City Immunization Registry ("CIR") the data provided in Commissioner's regulation 10 NYCRR Sec. 66-1.2 with respect to every vaccination administered to patients below the age of 19 after September 1 2009.

45.    The law was enacted and was effective on December 1, 2006 and directed both the Commissioners of the New York State Department of Health and the New York City Department of Health to implement regulations and a system by which healthcare providers could register and comply with the statutory provisions.

46.    The statute established two separate centralized data bases for the reporting of vaccinations: one for healthcare providers administering vaccines to pediatric patients below 19 years of age outside of the City of New York dubbed as the New York State Immunization Information System ( "NYSIIS") which is administered by the Commissioner, the other is called

9

New York City Immunization registry ("CIR") established for the same centralized vaccine data reporting purposes which is administered by the Commissioner of the New York City Department of Health and Mental Hygiene ("DHMH").

47.    While the vaccine reporting requirements are mandatory of healthcare practitioners such as Dr. Nesselson, electronic access to the CIR reporting database has to be granted by the DHMH Commissioner and officials after the processing of an application by the Vaccine Administration Unit of that department.

48.    Without access to the electronic database of the CIR which includes account numbers and sign in credentials, reporting of the vaccination data mandated by PHL Sec. 2168 is made impossible by the same officials who are withholding such access.

49.    The purpose of PHL Sec. 2168 is not, as Mr. Giovannetti contends in the other existing litigation to determine the validity of vaccinations or of the certificates of vaccinations issued by Dr. Nesselson to his pediatric patients in accordance with PHL Sec. 2164(5) and Commissioner's regulation 10 NYCRR Sec. 66-1.6. Nor is the purpose of PHL Sec. 2168 to vest the Commissioner with powers to invalidate vaccinations and certificates administered and issued pursuant to PHL Sec. 2164 - the new York mandatory vaccination statute and Commissioner's regulations 10 NYCRR Sec. 66-1.6.

50.    Rather the purpose of the statute is stated in no uncertain terms in PHL Sec 2168(1)(a) through (d) and is summarized herein as follows: (a) collection of data regarding immunization to reduce the illness disability and death due to vaccine preventable illness; (b) establish a centralized database to collect and disclose vaccine information as it may promote health and well-being of all children;(c) make available to an individual, parents, third party payors

10

and others the immunization status of a child (d) appropriately protecting the confidentiality of individual identifying information and person whose data is being reported,

51.    By all accounts, Dr, Nesselson applied for access to the CIR database in accordance with the statute in 2006 at a time when the Office of Professional Medical Conduct headed by the Commissioner was conducting an investigation into his vaccine practices pertaining to two patients.

52.    However, the NYC DHMH officials never communicated with him regarding the status of his application and never provided Dr Nesselson with access to the CIR at the time of the application or at any time thereafter. In addition, Dr Nesselson's  calls and attempts of reaching the DHMH officials with respect to the status of his access to the CIR were never returned. As a result, Dr. Nesselson never received access to the CIR, a condition precedent to his ability to report vaccines.

53.    In 2007 the Board of Professional medical Conduct ("BPMC") issued a disciplinary order which placed Dr. Nesselson on a 36 months supervised probation. The Order conditioned the retention of his license inter alia upon magnifying glass like monitoring by OPMC probation officers as well as by the practice monitor of Plaintiff's medical records and practice including vaccination practices. EX B hereto.  The OPMC is an agency under the umbrella of the department of health and under the Commissioner's own supervision  and operates at his service and supervision.

54.    Part of the 2007 disciplinary order mandated that the Plaintiff had to comply with all of the laws relevant to his practice of medicine which in this case includes PHL Sec. 2168. By the first date when the order of discipline of 2007 was in effect which was April 4, 2007, so was PHL Sec. 2168 which became effective on December 1, 2006.

55. Because the City DHMH officials stonewalled Dr. Nesselson's attempt to obtain access to the CIR for the purposes of vaccine reporting the to the centralized database, Dr. Nesselson gave actual notice to both the practice monitor and to the OPMC probation officers, and thus to Commissioner's predecessor that Dr Nesselson's ability to comply with the reporting requirements of PHL Sec. 2168 was precluded by the City DHMH officials obstruction of his access to the CIR.

56. Instead of conducting an inquiry into the actual status of Dr. Nesselson's access to the CIR and compel the DHMH officials to process the access application, the Commissioner through the OPMC probation officials advised Dr. Nesselson that so long as he documented the vaccines in his medical records and provided the paper certifications mandated by PHL Sec. 2164(5) and the Commissioner's regulation 10 NYCRR Sec. 66-1.6 which must contain the type of vaccine administered (name of vaccine), the date when the vaccine was administered and Dr. Nesselson's signature, there would be no violation of the Order of probation or of New York Law.

57. Accordingly and without incident, and while under the watchful eye of Commissioner's own agents and employees of the OPMC, Dr. Nesselson did that what the Commissioner's officials told him to do. He scrupulously complied with the provisions of PHL Sec. 2164(5) and commissioner's regulations 10 NYCRR Sec. 66-1.6 by providing paper certificates to all the pediatric patients' guardians who were in his care and by documenting each and every administered vaccine in the pediatric patients' records.

58. Neither the OPMC, nor the Commissioner nor anyone else found any violations of the terms of the probation of the 2007 Order or of New York law where they had actual knowledge of Dr. Nesselson's inability to report vaccines to the CIR due to the obstruction of his access to the

12

CIR by the DHMH officials. The probation terms of the first disciplinary order of 2007 expired by their own terms in November of 2010.

59.    In April 2011, after the expiration of the probation term under the 2007 order, in settlement of a new OPMC investigation which pertained to Dr Nesselson's inability to pay the insurance premium of $84,000 due to a family illness which in turn would up in losing his coverage of $2 million dollars, Dr. Nesselson agreed to the extension of the initial three years' probation period to another 36 months on the same terms as the order of 2007.

60.    Once again Dr. Nesselson was subjected to the magnifying glass supervision of his practice, the review of 20 charts per month by the practice monitor, visits from the OPMC probation officers and compliance requirements of the 2007 order which included compliance with all the laws applicable to his practice of medicine, including PHL Serc. 2168.

61.    Once again Dr. Nesselson had to disclose to commissioner's probation officers from the OPMC that he did not have access to the CIR, that the same was being obstructed by the DHMH officials and that he was unable to comply with the reporting terms of PHL Sec. 2168. And once again the Commissioner was on constructive and actual notice that Dr. Nesselson was unable to comply with the reporting requirements of PHL Sec. 2168 and the accompanying Commissioner's regulation 10 NYCRR Sec. 66-1.2 because of obstruction of access to the CIR by the DHMH officials.

62.    Once again through the new 36 months period of probation lasting though April 2014  and under the watchful eye of Commissioner's own subordinates of the OPMC probation office Dr. Nesselson vaccinated his pediatric patients and provided the vaccination certificates mandated by PHL Sec. 2164(5) and regulation 10 NYCRR Sec. 66-1.6 to his pediatric patients.

13

63.     Once again the Commissioner through the OPMC officials advised Dr. Nesselson that because access to the CIR was obstructed by the City DHMH officials, so long as he provided vaccines to his pediatric patient, documented the same in the medical records and provided the requisite paper certifications.

64.     After the expiration of the second probation period in April of 2014, Dr. Nesselson continued his practices approved by the Commissioner and the OPMC probation officers  of vaccinating his patients while providing the paper certifications mandated by PHL Sec. 2164(5) and commissioner's regulations 10 NYCRR Sec. 66-1.6. The certifications were uniformly accepted without incident by school districts, summer camps and any and all outfits demanding proof of vaccinations.

65.     In or about July 2023 and October 2023 the DHMH officials received what they dubbed as reports from two  school nurses labeling Dr. Nesselson's certifications issued pursuant to PHL Sec. 2164(5) and commissioner's regulations 10 NYCRR Sec. 66-1.6 as "fraudulent". The reports did not really provide any facts or information that the records were fraudulent or that the vaccinations were not administered. Rather the school nurses made the reports to the DHMH uniformly based on the fact that they could not correlate the information in the paper records to the NYCIR entries, to which, unbeknownst to the nurses, the DHMH officials have been obstructing Dr. Nesselson's access  since 2006.

66.     On or about the end of 2023 and beginning of 2024, the parents of Dr. Nesselson's pediatric patients from the schools whose school nurses initiated the reports to the DHMH were also reporting to Dr. Nesselson that the school officials were threatening to invalidate his vaccine certifications and the pediatric patient's vaccinations because the same information could not be found by them in the CIR database.

14

67.     No such authority is granted to school officials by PHL Sec. 2164(7) or by any statute to invalidate bona fide vaccinations and the paper certificates issued by Dr. Nesselson pursuant to PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6. Nonetheless, that is what the school officials threatened to do and made formal reports to the DHMH documenting their ignorance of the law.

68.     Instead of explaining to the school staff that Dr. Nesselson was unable to report vaccine data to the CIR because the DHMH officials were obstructing his access to the same since 2006 and instead of further explaining to the school nurses that the reporting requirements of PHL Sec 2168 had no relevance to the validity of the vaccination paper certificates provided by PHL Sec. 2164(5) the DHMH officials and then the defendants herein chose to create a legal fiction that the reporting requirements of PHL Sec. 2168 were somehow unrelated to access to the database and they are related to the validity of vaccinations and the certificates of vaccinations issued pursuant to PHL Sec. 2164.

69.     The defendants took the untenable position that where Dr. Nesselson has no access to the CIR a situation which was perpetuated by defendants' own action beginning on March 2024 that in the absence of CIR reporting all of the vaccinations provided by Dr. Nesselson were invalid and that his paper certifications issued pursuant to PHL Sec. 2164 were invalid and instructed schools to reject the same. EX B hereto.

70.     No authority exists for this position. The purpose of the CIR reporting pursuant to PHL Sec. 2168 is not to validate or invalidate the administration of vaccinations or the issuance of the paper certificates issued pursuant to PHL Sec. 2164(5) and 10 NYCRR sec,. 66-1.6. The purpose of the CIR specifically stated in no uncertain terms in PHL Sec. 2168(1)(a) through (d).

It is not to validate or invalidate vaccinations or the paper certifications by cross referencing the information. The purpose is to keep a centralized database for the purposes of disease control.

71. Between July 2023 and March 2024 the DHMH officials did nothing with respect to the reports received from school nurses and nothing with respect to the newly filed application for CIR access by Dr. Nesselson in February 27, 2024.

72. On February 27 2024 Dr. Nesselson again successfully submitted an application to the DHMH for access to the CIR in response to his patient's guardians reports that schools were threatening to invalidate the paper certificates and reject the vaccinations administered by Dr. Nesselson because of his inability to report to the CIR. See EX B hereto.

73. Similar to his experience in 2006-2007, Dr Nesselson's application was obstructed and ignored by the DHMH, his attempts at contacting the DHMH officials were ignored and no communication was received by him regarding the status of his application from the DHMH officials. In short, his access to the CIR continued to be obstructed by the City DHMH officials who actually were responsible for creating Dr. Nesselson's inability to comply with the vaccine reporting mandates of PHL Sec. 2168 and made such requirements impossible.

74. By March of 2024 investigator Giovannetti was contacted by DHMH officials regarding the complaints received from the nurses reporting Dr. Nesselson's lack of CIR reporting.

75. Upon contact, Mr. Giovannetti and the Commissioner were or should have been aware of the public disciplinary orders of 2007 and 2011 and of the fact that Dr. Nesselson was unable to report vaccines to the CIR due to obstruction of access to the database and that the OPMC officials did not find that a violation of the disciplinary orders or of any part of the PHL.

76. In short there cannot be a violation of PHL Article 21 where the defendants know and should have known that since 2006 Dr. Nesselson's access to the CIR database was obstructed

16

and denied through the DHMH official's ignoring Dr. Nesselson's application and communications regarding the same and through deliberate inaction.

77.     Upon his involvement in March with the DHMH, rather than compelling the City officials to grant the Dr Nesselson access to the CIR database, Mr. Giovannetti directed the city officials to place an indefinite administrative hold on Dr. Nesselson's access application without notice and opportunity to be heard. This action in effect further obstructed and continues to obstruct Dr. Nesselson's access to the CIR.

78.     The defendants then posted twice on their official web site without any formal findings or due process provided by the Constitution and by PHL Sec. 12-a that Dr. Nesselson's access to NYCIR was suspended or does not exist and therefore all schools must reject his paper certificates provided pursuant to PHL Sec. 2164(5) because his vaccinations provided to his pediatric patients necessarily violate the Public Health Law. .

79.     No statute provides the defendants with authority to direct school districts to reject paper certifications issued pursuant to PHL Sec 2164(5) and documenting bona fide vaccinations administered by Dr. Nesselson. The defendants are now actively obstructing Dr. Nesselson's access to CIR while preventing him from making the requisite reports and at the same time they are issuing subpoenas purporting to investigate the very same violations of PHL Sec. 2168 which they themselves created through their own actions.

80.     Dr. Nesselson's inability to comply with the reporting mandates of PHL Sec. 2168 for a period of almost two decades with the ongoing knowledge and blessing of the Commissioner and his lack of reporting to the CIR occasioned solely by the obstruction of access to the same by the defendants themselves and by the DHMH officials does not and cannot constitute a violation

17

of Article 21 of the PHL where the circumstances occasioning the lack of reporting were created by the defendants themselves.

81.     Under defendants' commands and instructions, Dr. Nesselson's access to the CIR is now perpetually restricted by administrative fiat and without any formal hearing or due process. These issues are all pending sub judice in the exiting litigation EX B hereto.

82.     Succinctly stated, the subpoena violates the Fourth Amendment because it is not authorized by statute. No statute enables the defendants to actively create the very same circumstances which they purport to investigate, namely deny Dr. Nesselson's access to the CIR and then purport to investigate him for not being able to make the reports mandated by PHL Sec. 2168.

(c)     **The subpoena was issued pursuant to as applied unconstitutional <u>statutes namely PHL Sec. 206(4)(a) and PHL Sec. 12-a(1).</u>**

83.     Because a subpoena issued by an investigator whose active directives and actions caused Dr Nesselson's inability to comply with the provisions of PHL Sec. 2168 (EX B hereto) and who spearheads the purported investigation and the existing litigation against the defendants by Dr. Nesselson, to the extent that the defendants contend that the subpoena is issued pursuant to PHL Sec. 206(4)(a) and PHL Sec. 12-a(1), the same statutes are unconstitutional as applied thereby rendering the subpoena invalid.

84.     A statute is unconstitutional as applied when the circumstances of the defendant's case result in the constitutional violation. "In an as applied challenge, the question is whether the statute was unconstitutional as applied to the facts of the case.

85.     That is exactly the case here. Both PHL Sec. 206(4)(a) and PHL Sec. 12-a(1) are unconstitutional as applied because they were cited as authority for the issuance of a subpoena

issued by a state investigator, a fact which is applicable to this case and which renders the subpoena violative of the Fourth Amendment.

86.     To the extent that the statutes are cited as authority for the issuance subpoena they are   also unconstitutional as applied because they do not authorize the issuance of an investigative subpoena where no violation of PHL Article 21 exists for all of the reasons articulated above and in the exiting litigation EX B hereto.

(d)     **Standing to challenge the subpoena**.

87.     The Plaintiff has a constitutional right and standing  under the Fourth Amendment to challenge the instant subpoena and seek pre compliance judicial review prior to being faced with an enforcement action and with the consequences of deliberate failure to comply with the subpoena without seeking adjudication of the constitutionality of the subpoena.

**AS AND FOR A FIRST CAUSE OF ACTION -
DECLARATORY JUDGMENT PURSUNT TO
<u>28 USC SEC. 2201 ET.SEQ</u>.**

88.     Plaintiff repeats reiterates and realleges each and every allegation set forth in the paragraphs hereinabove with the same force and effect as if the same were set forth at length herein.

89.     For all of the above referenced reasons the Plaintiff is seeking relief in the form of a declaratory judgment pursuant 28 USC Sec. 2201 et. seq as follows:

(a)     Declaring the subpoena (EX A hereto) unconstitutional and in violation of the Fourth Amendment.

(b)     Declaring PHL Sec. 206(4)(a) and PHL Sec. 12-a(1) as applied unconstitutional.

90.     The declaratory relief sought in connection with defendants' conduct specified in subparagraphs (a) through (c) above is supported by the totality of the allegations of this complaint

which for the sake of brevity are incorporated herein by reference. The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations.

91.    Moreover, a declaratory judgment is the proper procedural vehicle by which the Plaintiff can challenge the constitutionality of a statute. Justiciable controversies exist as set forth below.

(i)    **Both PHL §206(4)(a) and PHL §12-a(1)
        are unconstitutional as applied and violative
        of the Fourth Amendment.**

92.    Defendants invoke both PHL §206(4)(a) and PHL §12-a(1) as the source of the investigators' authority to issue the subpoena attached hereto as EX B.

93.    The Plaintiff seeks a declaratory judgment pursuant to 28 USC §2201 et.seq. declaring both statutes as applied unconstitutional. In an as-applied challenge, the Court must analyze "the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right. In the context of an as-applied vagueness challenge, a court's analysis should be confined to the litigant's actual conduct, and a court should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute.

94.    To be compliant with the Fourth Amendment the subpoena cannot be issued or enforced by a government investigator. To be valid under the Fourth Amendment the agency must have designated officials and a specific process for the issuance of the subpoena which eviscerates and reviews the discretion of the investigators to harass witnesses and employees of the purported target of an investigation through the compulsory subpoena process.

20

95.    For example, in the case of physician discipline only the executive director of the Board of Professional Medical Conduct has the authority to issue a subpoena and that only after consultation with members of the Board of Professional Medical Conduct and the consent of such committee to the issuance of a subpoena. See for example PHL §230(10)(k).

96.    PHL §206(4)(a) vests only the Commissioner with powers to issue subpoenas in aid of hearings and investigations. The statute does not vest the investigator defendant Giovanetti with powers to morph himself into the Commissioner's position and use the same empowering statue authorizing the issuance of subpoenas by the Commissioner to anoint themselves with subpoena issuing powers. Similarly, the Commissioner cannot delegate the subpoena making powers to the investigators under §206(4)(a) because no such delegations powers were given to him by the legislature under this statute.

97.    Therefore, Defendants' invocation of PHL §206(4)(a) as an authority for the issuance of the subpoena by state investigators is as applied unconstitutional.

98.    Similarly, PHL §12-a(1) states that: The commissioner, or any person designated by him for this purpose, may issue subpoenas and administer oaths in connection with any hearing or investigation under or pursuant to this chapter, and it shall be the duty of the commissioner and any persons designated by him for such purpose to issue subpoenas at the request of and upon behalf of the Defendant.

99.    PHL §12-a(1) does not however vest the Commissioner with powers to override the Fourth Amendment and delegate the powers to issue subpoenas to DOH investigators. That is just how the Defendants apply the statute to the facts of this case to vest the investigators with powers which they do not have. Most importantly PHL §12-a(1) does not specifically state that the Commissioner's powers to issue subpoenas can be delegated to state investigators. The term

21

"any person designated by him for this purpose" does not include and cannot include investigators which are barred from issuing subpoenas under the Fourth Amendment as set forth by US Supreme Court Jurisprudence. The reason for that is simple. There must be some impartial party between the investigative authorities and the target of the subpoena who can decide is a subpoena allowing the officer to enter and inspect the premises should be issued. The analogy is similar to the "probable cause" analogy used by the courts to issue warrants.

101.  For all of the above referenced reasons the Plaintiff is seeking a declaratory judgment pursuant to 28 USC §2201 et.seq. declaring PHL §12-a(1) and PHL §206(4)(a) unconstitutional as applied.

102.  For all of the foregoing reasons and for all of the reasons articulated above in this Complaint the Plaintiff is seeking a declaratory judgment pursuant to 22 USC §2201 et.seq. declaring the subpoena illegal and unconstitutional.

**AS AND FOR A SECOND CAUSE OF ACTION
FOR A PRELIMINARY INJUNCTION PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 65**

103.  Plaintiff repeats reiterates and realleges each and every allegation set forth in the paragraphs hereinabove with the same force and effect as if the same were set forth at length herein.

104.  The Plaintiff is seeking a preliminary injunction pursuant to FRCP 65 preliminarily enjoining the defendants their servant agents and assigns from seeking to enforce the subpoena based upon the fact that the same violates the Fourth Amendment for all of the reasons articulated hereinabove.

22

105.    The subpoena states that the defendants will subject the Plaintiff to such penalties provided by the state of New York for failure to comply with the subpoena.

106.    However, the whole point of the Fourth Amendment and pre compliance judicial review of an administrative subpoena is to be able to seek adjudication of Plaintiff's claims of the unconstitutionality and legality of the subpoena without being subjected to the uncertain outcome in the event of an enforcement action.

107.    Therefore, an enforcement action would have the chilling effect of preventing the Plaintiff from having the merits of her action determined by this Court before the determination of Plaintiff's enforcement action. Such result would further prospectively violate Plaintiff's Fourth Amendment rights and cause her irreparable harm.

108.    The Second Circuit recognizes that prospective violation of constitutional rights amounts to irreparable harm.

109.    For all of the reasons articulated hereinabove the Plaintiff is likely to succeed on the merits of this action.

110.    Specifically, the Plaintiff is able to show that the subpoena violates the Fourth Amendment because it was issued by an investigator in violation of the foregoing constitutional protection; the subpoena was not authorized by statute for all of the reasons articulated hereinabove and the subpoena was issued pursuant to as applied unconstitutional statutory provisions namely PHL Secs. 206(4)(a) and PHL Sec. 12-a(1).

111.    For all of the above referenced reasons, the Plaintiff is seeking a preliminary injunction pursuant to FRCP 65 preliminarily enjoining the defendants herein from enforcing the unconstitutional subpoena and furtherer violating her Fourth Amendment rights pending the hearing an final determination of the merits of this action.

23

**AS AND FOR A THIRD CAUSE OF ACTION -
PERMANANET INJUNCTION PURSUANT TO
42 USC SEC. 1983.**

112.   Plaintiff repeats reiterates and realleges each and every allegation set forth in the paragraphs hereinabove with the same force and effect as if the same were set forth at length herein.

114.   Plaintiff is seeking a permanent injunction pursuant to 42 U.S.C. § 1983 enjoining the Defendants, their agents' servant and assigns from doing or causing to enforce the subpoena for all of the reasons articulated above.

115.   To  state a cause of action under 42 USC §1983 the Plaintiff must allege  that some state official acting under color of state law deprived him of a federal right. Furthermore, to state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. The requirement that the defendant acted under 'color of state law is jurisdictional. Section 1983 itself creates no substantive rights; it provides  only a procedure for redress for the deprivation of rights established elsewhere.

117.   In this case the plaintiff stated that her Fourth Amendment rights are going to be prospectively violated if the defendants are not enjoined from seeking to enforce a subpoena which violates her Fourth Amendment constitutional rights.

118.   The defendants have issued the unconstitutional subpoena under the color of New York law to harass the Plaintiff through the use of the New York state investigative system under the color of New York law, namely PHL Sec. 206(4)(a) and PHL Sec. 12-a(1).

119.   In order to receive injunctive relief under 42 USC §1983, there must be the possibility and threat of prospective violation of constitutionally protective rights. In this case as

24

set forth above the Plaintiff is seeking  prospective injunctive relief against the state actors for all of the reasons articulated above and in the subpoena itself. The facial language of the subpoena indicated defendants' intent to subject the plaintiff to the penalties allowed under New York law for failure to appear at an interview which is compelled by an unconstitutional subpoena.

120.    In order to state a claim under §1983, a Plaintiff must also allege the violation of a right preserved by another federal law or by the Constitution. That is exactly what the Plaintiff has done in this case. She alleged violation of her constitutionally protected rights under the fourth Amendment.

122.    To establish liability under 42 U.S.C. § 1983, a Plaintiff must prove two essential elements: (1) that the Defendants acted under color of state law and (2) that the Plaintiff suffered a deprivation of a constitutional right as a result of that action.  That is exactly what the Plaintiff has done here. She has shown that the defendants are acting under the color of PHL Sec. 206(4)(a) and PHL Sec. 12-a(1) while issuing a subpoena which is executed by an investigator; it is without statutory authority and it is issued pursuant to as applied statutory scheme and violates the Fourth Amendment.

WHEREFORE the Plaintiff requests that the relief sought in this Complaint be granted in its entirety in the form and substance set forth in the First through Third  Causes of Action.

Dated: February 3, 2026

Attorney for the Plaintiff
JACQUES G. SIMON ATTORNEY
AT LAW P.C.
*/s/ Jacques G. Simon*
Jacques G. Simon, Esq.,
200 Garden City Plaza Suite 301
Garden City, NY 11530
Bar No. JS 9212
Phone: (516)378-840 Fax:(516)378-2700
Email: jgs@jacquessimon.com

25