# EXHIBIT B PART II

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN
-----------------------------------------------------------------------X
MARK NESSELSON M.D.

                                 Case No.: 1:25-cv-04464 JLR


                Plaintiff,              **PLAINTIFF'S DECLARATION**
                                              **PURSUANT TO 28 USC §1746**
                                              **IN SUPPORT OF MOTION FOR**
                                              **A PRELIMINARY INJUNCTION**
                                            **PURSUANT TO FED. R. CIV.**
                                              **PROC. 65.**

                -against-

James McDonald MD in my official
capacity as Commissioner of NYS
Department of Health;Joseph A. Giovannetti
in my official capacity as Director of Bureau of
Investigations NYS Department of Health;
Michelle Morse M.D. in her official capacity
as Commissioner of the New York City Dept.
of Health and Mental Hygiene; New York City
Dept. of Health and Mental Hygiene,

                Defendants.
-----------------------------------------------------------------------X
        COMES NOW the Plaintiff  Mark Nesselson MD and submits this declaration pursuant to

28 U.S.C. §1746 in support of  his motion for a mandatory and prohibitive  preliminary injunction

pursuant to Fed. R. Civ. Proc. 65.

        1.      I am  the Plaintiff  in this action and as such I have personal knowledge of all of

the facts and circumstances pertaining to this litigation.

        2.      I submit this declaration pursuant to 28 U.S.C. §1746 in support of  my  instant

motion for a mandatory and prohibitive injunction, as set forth in the accompanying Complaint

the accompanying Notice of Motion and supporting memorandum of law filed simultaneously

herewith.

1

3.    I have read the Amended  Complaint DE 49 and the exhibits annexed thereto and know all of the facts and allegations therein to be true to the best of  my  knowledge. As to those facts stated upon information and belief, I believe them to be true. The source of my belief is the review of the case file documents and my readings of relevant internet postings referred to in the Amended Complaint.

4.    In addition, in preparation for this declaration I have reviewed the following additional documents: (a) DE 39 - declaration of Bindy Crouch dated September 16, 2025 with EX 1 thereto DE 39-1 originally filed in opposition to my initial motion for a preliminary injunction; (b) declaration of Joseph Giovanetti dated September 17, 2025 DE 43 and attached Exhibits DE 43-1 through DE 43-7.

## FACTUAL BACKGROUND

**(a)    In general - factual background regarding my training, licensing, practice of medicine and <u>prior irrelevant disciplinary action.</u>**

5.    I am a physician licensed to practice medicine in the state of New York. My license number is 165950 issued on April 18, 1986. My office is located in New York City at the address mentioned hereinabove. I am a pediatrician and my practice is focused on pediatric patients. I attended medical school at the Abraham Lincoln School of Medicine at the University of Illinois from September, 1978 and graduated in December, 1982.  I served my Pediatric Internship from July 1983 through June 1984, and subsequently my Pediatric Residency from July 1984 through June 1986 at New York University Medical Center.

6.　　From September 1986 through August 1993, I was an attending physician in the outpatient department at Metropolitan Hospital Center in New York City. I was bestowed the academic credential of Assistant Professor of Clinical Pediatrics from New York Medical College, under whose auspices  I taught medical students and supervised interns and resident physicians.

7.　　From 1990-1992, I attended as a non-degree candidate, the Pacific College of Oriental Medicine. In 1993-1994,  I attended the Natural Gourmet Institute to identify foods as tools for healing. I  opened my private practice in Pediatric and Adolescent Medicine in its current location at 146 W 95th St New York, NY 10025in June, 1989.

8.　　I  temporarily  relocated to the island of Kauai in Hawaii.  I maintained a practice of phone consultations with my New York patients, and traveled to New York four times yearly to see patients for a concentrated two to three weeks period at a time.

**(b)　　<u>Prior disciplinary action - not applicable to the present facts.</u>**

7.　　My prior disciplinary history - Board of Professional Medical Conduct ("BPMC") Order of November 14, 2007   DE 49-4 and BPMC Order of April 4, 2011 DE 49-5 is irrelevant to the facts of this case for several reasons: (1) the terms of the orders expired without extension and modification by their own terms  on April 3, 2014 as explained below; (2) neither one of the disciplinary orders EVEER restricted my medial license and/or my ability to vaccinate my pediatric patients; (3) during the probation period which lasted six years between November 11, 2007-November 10, 2010 as modified in the second Order to run between April 4, 2011 and April

3, 2014 the OPMC and at no time subsequent to the expiration of probation on April 3, 2014 the OPMC probation monitors and the practice monitors had actual notice that I was unable to make reports to the CIR based upon administrative denial of access to the system through non processing of my application and they did not find any violation of the probation terms which included compliance with the law governing my practice; (4) prior disciplinary action does not entitle state officials to make an assumption without any evidence that subsequent vaccinations administered by me and documented by paper certifications are fraudulent

8.    In connection with the 2007 Order DE 49-4, charges were issued against me by the Office                    of                    Professional                    Medical Conduct.https://apps.health.ny.gov/pubdoh/professionals/doctors/conduct/factions/FileDownload Action.action?finalActionId=6907&fileName=BRD+165950.pdf&fileSeqNum=1. The sum and substance of the charges is that during various periods preceding the date of the charges I provided medical records which reflected that patients A and B received forms representing to schools and camps that the patients  were vaccinated while the medical records of patients A and B did not reflect receipts of such vaccinations. See DE 49-4 to the Amended Complaint.

9.    As a result of the charges, I voluntarily entered into a consent Order dated November 7, 2007 pursuant to which I had to pay a $10,000.00 fine and was placed on probation for thirty six months practicing with a practice monitor who closely reviewed my medical records to ensure compliance with the provisions of the order. According to the terms of the probation, the monitor provided monthly reports to the OPMC compliance officer.  I successfully completed the probation of thirty six month and the conditions of the order of 2007 terminated with the period of the probation by their own terms on November 10, 2010, DE 49-4.

10.    Most importantly, at no time before or after the issuance of the November 2007 Order - DE 49-4 to the amended complaint, or within the Order itself did the BPMC ever impose upon me any restrictions barring me from vaccinating my pediatric patient or from providing documentation of such vaccinations to school districts or any other facilities attended by the pediatric patients where immunization records were or are required. DE 49-4.

11.    The 36 month probationary period of the 2007 Order and the order itself expired by its own terms in November 13, 2010. DE 49-5.

12.    Notwithstanding the self-termination of the 2007 order, in 2011 the OPMC purported to investigate violations of the defunct order of 2007 based upon issues which had no relevancy to the prior Order.

13.    The alleged investigation pertained to my inability to pay the malpractice premium of $84,000.00 due to the medical expenses which I had to outlay on behalf of an immediate ill member of my family. It had nothing to do with the 2007 Order or its terms.

14.    As a result of the same "renewed" investigation, in exchange for dropping the same I agreed to the "modification" of the initial expired order on advice of counsel. On April 4, 2011 an additional modification order was issued upon my "voluntary application". See DE 49-5 to the Amended Complaint. As it can be seen from the same Order modification, the period of probation and the terms of the probation of the 2007 Order were extended for an additional thirty six months. The probation terms under this order which became effective on 04/13/2011 - DE 49-3 expired on their own terms on midnight of April 12, 2014. This was more than ten years before defendants' actions against me took place in July 2024 as set forth in the complaint.

15. Most importantly, the modification order DE 49-5 to the amended complaint, also did not impose any restriction on my practice of medicine at any time; it did not restrict me from administering vaccinations to my pediatric patients and further did not restrict me from providing paper documentation as proof of vaccinations to the patients to submit and file with school districts.

17. Significantly, at no time was my license ever restricted by the Board of Professional Medical Conduct to bar me  from providing vaccinations to my pediatric patients and provide medical records to school districts evidencing such vaccinations.

18. Because there was no vaccine fraud charge or license restriction imposed upon the me by the BPMC the defendants have no authority to impose one upon me by simply ignoring my registration for NYCIR - DE 49-3 and then falsely declaring on their official website that the I was suspended from the NYCIR and that no paper documentation of vaccination should be accepted from theme.

19. As discussed in the amended complaint and in the accompanying memorandum of law in support of the instant motion for preliminary injunction, there is no authority for such summary action without the minimum due process steps of notice, opportunity to be heard and a formal hearing are offered and followed.

**(c)    My continued practice of medicine and recent
relevant facts which precipitated the filing of this
<u>action.</u>**

20. Between the time of the imposition of the First disciplinary Order DE 49-4 to the Complaint which was effective as of November 14, 2007 through recently in November 2024 when I first learnt that the defendants took and continue to take summary action against my license

6

without due process as stated in the complaint,  which included my exclusion of access from the NYCIR and barring schools and other facilities from accepting paper documentation of vaccination from my pediatric patients, I practiced medicine as a pediatrician at my current office address without any restrictions.

21    I routinely vaccinated my pediatric patients and  I routinely provided paper documentation to schools, camps and other facilities demanding vaccination records.

22.    All of the records were unceremoniously accepted as proof of vaccination until November 2024, when I became aware that the state defendants directed all New York facilities demanding proof of vaccination to reject my records as of July 31, 2024. See Amended  Verified Complaint.

23.    In addition, as discussed below, my application for access to NYC City Immunization Registry  ("NICIR")was and admittedly continues to be administratively obstructed by the City defendants through an uncommunicated "administrative hold" without notice, as admitted by the Assistant Commissioner Crouch in her declaration DE 39.

24.    The most recent unconstitutional denial of my access to the CIR through an unreviewed "under the radar" "administrative hold" posted under the color of New York law by the City defendants is not something new.

25.    It is a pattern of undisclosed and hidden administrative obstruction of my access to the NYC which, as recently disclosed by the Assistant Commissioner Bindy Crouch, and unbeknownst to me began in 2006 when I first applied for access to NYCIR with the City defendants and then I never heard from them again until Commissioner Crouch's declaration of September 2024.

26. This time around the administrative obstruction was and continues to be orchestrated with the state defendants and it is executed at the admitted direction of investigators from the state defendants' office.

27. Most importantly during the period between 2006 through April 3, 2014, my vaccination practices were under the magnifying glass of the New York Board of Professional Medical Conduct ("BPMC") and its investigative and enforcement arm the State Office of Professional Medical Conduct ("OPMC") first in the form of an investigation then for a long period of six years almost continuous probation ranging between November 14, 2007 through April 12, 2014. See DE 49-4 through 49-5.

28. During that entire time the state department of health, its probation officers and practice monitors working for the OPMC and reporting to the OPMC had actual knowledge that i was unable to report vaccines to the NYCIR because the City defendants never gave me notice of acceptance into the system, ignored my inquiries about the status of my application and filed to provide me with sign in credentials.

29. To the best of my recollection I was instructed by both the practice monitors and the OPMC compliance officers that so long as I provided paper proof of vaccinations and they would scrupulously review my records to monitor the administered vaccines the OPMC and the BPMC would not find any violation due to the City defendants' obstruction of my access to the CIR. As it turns out, unbeknownst to me, the facts as recollected were confirmed both by the Crouch declaration and by Mr. Giovanetti's declarations as set forth below.

30. The obstruction of my access of the NYCIR though administrative fiat and without notice and opportunity to be heard continues through this date and into the future in perpetuity.

31. So does the ad hoc administrative issued by the Department's chief investigator to school districts to reject my paper vaccine certifications based upon my inability to report vaccines to the CIR because of a situation which both the state and the City defendants have created and continue to create in deliberately obstructing my access to the database reporting system as particularly described below.

32. Prior to the blanket prohibition issued by the state defendants in this case to all New York facilities from accepting my paper certifications, there was no de facto restriction on my license and on my ability to practice medicine which included vaccinating my pediatric patients imposed by any state or other agency.

### (d)  Facts related to the statements made by Assistant Commissioner of the Bureau of Immunizations ("BOI") of the defendants DHMH.

33. The statement of Assistant Commissioner Crouch's declaration DE 39 refreshed my recollection of what actually happened almost 20 years ago when I was going through the initial investigation that brought about the 2007 Order and defendants' actions since that time.

34. Under this subheading I will piece together how the statement made by Commissioner Crouch make sense in supporting my recollection of the deliberate obstruction of my access from the CIR by the city defendants through administrative fiat over a period of time of almost two decades since 2006.

35.    The city defendants went so far to document this matter and their continued and prospective deprivation of my constitutional rights in the declaration of Assistant Commissioner Bindy Crouch. DE 39.

36.    At ¶ 6-8 of her declaration DE 39, BOI Assistant Commissioner Bindy Crouch ("Crouch") states as follows:

(6).    DOHMH records reflect that plaintiff previously had access to the NYCCIR from approximately 2006 through 2017, but during that time he never reported administering any immunizations into the NYCCIR.

(7).    If, in fact, plaintiff was providing immunizations during this time in New York City to persons less than nineteen years of age, he would have been in violation of PHL § 2168 and HC § 11.07 for not reporting said immunizations into the NYCCIR.

(8).    In or about 2017, plaintiff was deactivated from the NYCCIR registry based upon his inactivity for more than a decade.

(9).    DOHMH records do not contain any challenge to plaintiffs 2017 deactivation from the NYCCIR and, upon information and belief, plaintiff never inquired into his 2017 deactivation from the NYCCIR.

37.    These statements are of outmost importance because they corroborate and support my position stated in my initial declaration that I never received any notices from the defendants regarding any adverse action or any type of action regarding my access to NYCIR and I was unaware of any suspension and of the reason why the defendants simply ignored my inquiries and calls in 2024 after my new application to the NYCIR was submitted in February 2024.

38.    Because the City defendants, and in particular the declarant Assistant Commissioner of the BOI, Bindy Crouch did not attach any documents supporting any of her contentions made in ¶¶ 6 though 9 though her declaration, there is no way for anyone to examine

and address the DOHMH records based upon which the defendants are purportedly making the allegations in ¶¶ 6 through 9 of the Crouch declaration.

39.    Nonetheless, after reading the Crouch  declaration several things refreshed my recollection of what happened almost 20 years ago and everything came together the best that I do remember it.

40.    The investigation which did occasion the issuance of the OPMC Order of discipline of 2007 -  DE 49-4, to the best of my recollection commenced or was ongoing in 2006.

41.    One fact that did stick to my mind is that between the time when the investigation regarding my past vaccine practices was initiated in 2006 and the issuance of the first OPMC Order of November 11, 2007 DE 49-4 I was doing everything possible to correct anything that I was made aware that I was doing wrong or that I was non-compliant with. I became aware of the need to be registered to the NYCCIR during the investigative stage when it was becoming clear that my participation in the NYCIR and compliance with PHL §2168 was lacking..

42.    It was at that time when, as Commissioner Crouch corroborates in her declaration, I applied for access to the CIR with the City defendants' predecessors. I do not recollect if the process for the application was electronic or by hard paperwork at the time. I do however remember that after I applied, there was total silence from the City defendants. There was no acknowledgement of the receipt of the application and no communication whatsoever regarding the status of the  same. Then as now, the City defendants had a call in telephone number regarding the NYCCIR registrations for questions regarding the status of the application.

43.    I also recollect that as the OPMC case progressed into 2007, I was desperately trying to be compliant with any statutory provisions regarding my practice of medicine which included the participation in the NYCCIR. The reason for that was not only that the Order issued

at end of 2007 mandated compliance with the statutory provisions governing my practice of medicine DE 49-4 but prior to the issuance of the Order I was hoping to persuade and to show the Board of Professional Medical Conduct that I was in the process of being compliant and that subsequently thereafter I was taking compliance with the statutes governing my practice of medicine including those governing reporting to the database of the NYCIR seriously.

44.    Consequently, numerous calls and attempts to connect with the administrators of the NYCCIR program in 2006 and 2007 were made. However, as it was the case recently with my application in 2024, the predecessors to the City defendants never answered my calls and requests for communication and they never advised me that I was accepts into the CIR system. Acceptance of course would have come with particular sign in credentials which are confidential and cannot be posted publicly. I never received those.

45.    Contrary to the statements made in the declaration of Bindy Crouch, the NYC DOHMH never issued me with a decision in 2006 informing me that I was admitted to the NYCIR and that I was granted access to the same database. I was never provided with credentials of admission and in fact I was never able to access the NYCIR database at all. Then, as now, the defendants ignored my calls and messages. Because I had no access to the NYCIR I was therefore unable to make any reports.

45.    In fact I had to openly address this issue with the then OPMC monitor and the OPMC itself in the context of compliance with the 2007 order which I did. Both the OPMC monitor and the OPMC probation representative, while in my office advised me not to worry about the City defendants' silence  and that so long as I applied for access and had a pending application and provided paper certification of my vaccines and they could conduct the monthly audits of my

12

records from their perspective everything was in order.

46.      The probationary terms of the first disciplinary order was then extended into the terms of the second probationary Order of April 6, 2011 which was couched as a modification of the first order even though there was no connection to the issues which prompted the issuance of the second order as stated below. DE 49-5. Specifically, the investigation which prompted the issuance of the second order mentioned in my application for modification was related to maintaining extremely high limits malpractice insurance premiums which made the payment of premiums unaffordable due to the fact that I had to pay for medical bills of an ill family member.

47.      Therefore, while the probation terms of the first order ran for 36 months between November 11, 2007 through November 10 2010, the second probation period which commenced on April 4, 2011 lasted for 36 months through April 03, 2014. See DE 49-5. In the second order the terms and conditions of the first Order were modified on consent and supported by the requisite application for "modification" which included the extension of the terms of the probation of the first Order of 2007 which included close monitoring of my records.

48.      One of the conditions of the probation was my compliance with "governing law" which included reporting to the CIR and compliance with PHL §6128. Any willful violation of that term would have caused the BPMC to declare me in violation of the terms of the probation, and revoke my license after a hearing. However, even though the BPMC and the OPMC were both aware that the City defendants were not granting me access to the CIR and were not returning my attempts to communicate with them via telephone messages, no probation violations were issued and none were noted.

49.      Therefore for 18 years since 2006 until November 2024 I kept following the same routine which was then proposed and accepted by the BPMC and OPMC monitors and probation

officers, the agencies monitoring the terms of my probation for six out of the 11 years period during which the City defendants contend that I had access to the CIR. I administered vaccines, I documented the same in my records and I provided paper documentation of the vaccination.

50.    I was therefore much surprised to read Assistant commissioner Crouch's declaration in which she represented that the City records reflect I had access to the NYCIR from 2006 through 2017 when in fact no notice of such access was ever given to me and no sign in credentials were ever provided.

51.    I was equally surprised and to learn for the first time ever in September 2025 from the Crouch declaration  that the City defendants unilaterally without any communication or notice to me proceeded to revoke my access to CITR in 2017 because I supposedly failed to report vaccinations during that time. However it is the City defendants who made it impossible for me to report vaccinations into a subsystem to which they have actively blocked my access through either willful obstruction or simple failure of notice and communication of the sign in credentials.

52.    Had I been given notice of such proposed action of access revocation in 2017 and an opportunity to be heard back then I would have been able to present evidence and contest the purported summary revocation of my access to the NYCIR by simply showing that I was unable to report to the CIR due to City defendants' failure to provide me with access and sign in credentials into the system and due to the fact that they have been ignoring my attempts to contact them.

53.    I could not have reported vaccination to the CIR and I still cannot do that simply because since 2006 the City defendants systematically blocked me from access to this CIR system without any notice or explanation for the same. The City defendants, upon prompting from the state defendants  are still blocking my access to the NYCIR through their failure to process my new application of February 2004 and such obstruction and deprivation of my constitutional rights

14

to have access to the CIR system as set forth in the memorandum of law is present ongoing and continuous in perpetuity.

54.    Consequently, Commissioner Crouch's contention in ¶ 9  stating the DOHMH records do not contain any challenge to the suspension of access to NYCIR in 2017 is nothing short than absurd in light of the foregoing circumstances. In order for me to challenge the 2017 suspension I had to know in the first place that access to NYCIR was granted in 2006 and that it was subsequently suspended in 2017.

55.    As is the case currently, no notice of either the granting of access or of suspension of the same was received by me. Conspicuously missing from the commissioner's certification are the proof of my receipt of notice of the granting of access to the NYCIR and the sign in credentials which were supposed to be provided to me in 2006  as well as the purported notice of suspension of the access from NYCIR in 2017.

56.    Identical to the admittedly false statement put out on the public site DE 49-1 by the state defendants in 2024 that my access to NYCIR was suspended as of 07/31/2024 while the City defendants acknowledge that this statement is false because I never had access to the CIR before this false announcement took place - Crouch declaration at ¶ 23, Crouch pushes the false narrative that without notice of the initial grant of credentials to the NYCIR in 2006 and without notice and opportunity to be heard regarding the purported suspension of CIR access in 2017 I should have somehow challenged something that I had no idea that existed.

57.    The fact that no formal notice or any notice was given to me either in 2006 and 2017 of the city officials' purported action and  inaction and the fact that I had to continue doing what the Commissioner's regulations actually say that I should be doing which is to provide paper certification of vaccinations to my pediatric patients  as Commissioner regulation 10 NYCRR §66-

1.6 makes Assistant Commissioner's statement in ¶ 9 of her declaration nothing short than absurd. I cannot challenge "something" that I did not have any notice that it ever existed. Nor could I have reported anything to a system to which I was never granted access to or had any notice that the access was suspended from.

58.    Most importantly, the during the six years' probation period between 2007 and 2014 the  OPMC and the BPMC  ostensibly had unfettered access to my medical records, actually audited the same once a month through the practice supervisor, and not even once was the issue of failure to report vaccines to NYCIR or access to the same was brought up. DE 49-4 and 49.5.

59.    To the contrary, I had open and direct  contact with Commissioner's employees supervising my probation  who closely monitored through a magnifying glass my medical records and in particular my vaccination activities. Not once was I told that I was non-compliant or in violation of the provisions of the orders which provided that I have to comply with all statutes and regulations regarding my practice.

60.    Not once did either the state or the city defendants asked me at any time through today why I was not reporting or better said was unable to report vaccinations administered to patients under 19 years old. Had they bothered to do that they would have found out that it was these officials who blocked me and continue to block me from making such reports in accordance with PHL §2168 through either simply being tacit about my credentials and acceptance to NYCIR in 2006, my suspension in 2017 and the current events in 2024 which precipitated this case.

61.    The pattern of silence, failure to act and of ignoring my communications  and lack of notice and a formal hearing prior to formal governmental  action being taken against me is characteristic of City defendants' dealing with me in my effort to gain access to the CIR since 2006, as shown above and it continues through this date.

62.     Moreover, as it can be seen from the Crouch declaration at ¶10, the City defendants are using  the prior state disciplinary orders, the conditions  which have long expired by their own terms,  as an excuse to presently ignore my application for access to CIR and honor the state defendants demand for an administrative hold of my application without any notice of their action to me and while ignoring once again my communications and attempts to find the status of my February 2024 application.

63.     Specifically as it can be seen from my initial declaration in support of my initial application on February 27, 2024, after completing all of the requirements mandated by the City defendants to apply for access to the NYCIR, I successfully applied for access to the system which generated a registration number R-33813072036601368 and a message that the registration was completed. The registration also stated that the City defendants and the NYCIR system will contact me by email with a facility code. See DE 49-3.

64.     Subsequent to the completion of the registration I repeatedly called the NYCIR provider support team at the telephone number provided by the City defendants on the registration confirmation. DE 49-3.  I was told by defendants' employees repeatedly that  I will be contacted shortly by the City or state defendants, their servants and assigns with sign in credentials and additional documentation that has to be signed by me as a condition of the grant of my access to NYCIR.

65.     Through the date of this declaration  I was never contacted by anyone of the defendants regarding any issue related to the status of my NYCIR application - DE 49-3.  I was never told that my access to NYCIR was barred or denied nor was  I ever provided a reason for the City or state defendants'  failure and refusal to contact me  with respect to my application of access to the NYCIR.

17

66.     As it can be seen from the Crouch declaration DE 39 at ¶¶19-22, admittedly upon instruction from and acting in conspiracy and in concert  with the state defendants to violate my due process constitutional rights, the City defendants simply put an administrative hold on my application without any notice being given to me and under the guise that they were acting upon instructions from the state defendants.

67.     In sum, City defendants' conduct is consistent over the past two decades when dealing with my alleged access and suspension of access to NYCIR. Their process is secretive, decisions seem to be made secretively and without notice or communication to me by investigators of the state department of health, and at the end they blame me  that I cannot comply with the reporting requirements of Public Health Law Section 2168.

68.     Several times during the six years' probation term of the two orders I was told by both the practice monitor and during meetings with OPMC probation officers that maintaining the logs mandated by the terms of the probation and providing paper records of the vaccination was in compliance with the law.

69.     The situation then begs the question, why after such a lengthy period of time between 2006 when the city defendants contend that I had access to NYCIR, and then I was denied access to the NYCIR without my knowledge  in 2017 and February 2024 when I applied again for access to NYCIR did I not do anything about gaining access to the NYCIR and why all of a sudden in February 2024 I applied for access out of the blue.

70.     The answer is found in Assistant Commissioner Crouch's own declaration at ¶¶ 12 through 14. Starting in July 2023 through October 2023, patients' parents were reporting to me that school authorities and nurses  were reporting to the city health authorities that I was not reporting the vaccinations of their children to the CIR. The school authorities were also telling parents that

18

my certifications would not be accepted by the schools for the reason that the paper certifications could not be verified by the school authorities by parallel reporting by me in the CIR. All these facts are corroborated by Assistant Commissioner Crouch's own account at ¶¶ 12 through 14.

71.    The parents' stories to me paralleled those of Commissioner Crouch. The  were confronted by the school authorities and told that because the vaccinations of their children is not in the NYCIR, the paper records that I was providing was not accepted.

72.    Instead of investigating why I could not report vaccines to the CIR, which was due to Coty defendants actions taken back in 2006 and 2017 which permanently obstructed my access to the CIR, Commissioner Crouch asked City medical Specialist Denise Brenkel to call my office and ask in December 2023 if I was actively vaccinating patients. Of course the answer was a resonating positive since I have a pediatric practice. See Crouch declaration at ¶¶ 13.

73.    This is how my February reapplication for admission to the CIR came about on February 2024. Although I was not aware of the complaints received by the City defendants from the school authorities,  the February CIR access application DE 49-3was in response to a sudden wave of concerted school nurses rejection of my paper certifications  which were relayed to me by my patients' guardians.

74.    The Crouch declaration further states at ¶16 that " Between February 2024 and May 2024, BOI's School Compliance Unit received four more reports from schools inquiring into potentially fraudulent health forms regarding six students completed by plaintiff that could not be verified in NYCCIR."

75.    Without exception, the stated specific complaints received by the City defendants between July 2023 and May 2024 as stated in the Crouch declaration was because of my inability to report vaccines to the CIR. This inability was created  by City defendants' block of my access

19

to the system and initial lack of communications advising me of acceptance in 2006 to the CIR and release of sign in credentials as set above.

76.    Then there is the argument made both in the Crouch and in the Giovanetti declarations that some of the reports between February 2024 and May 2024 made by the school nurses alleged that Dr. Eileen Daar was entering immunizations records into the NYCIR on behalf of the plaintiff. See Crouch declaration at ¶16.

77.    That is correct. In the absence and continuous denial of access to the CIR which the city defendants and the state defendants have to provide to healthcare providers for the purposes of PHL §2168 reporting, and in the presence of patient reports that my paper certifications were rejected because the patients names and their immunizations were not documented in the NYCIR I did approach a colleague, Eilene Darr MD (now deceased) to enter the vaccination reports on my behalf under my name, which she acknowledged that she did. See Giovanetti declaration DE 43.

78.    This was not vaccine fraud, but rather a desperate attempt by me to make sure that the patients got the benefit of the vaccine reports under my name NOT under Eilene Darr's name

which the schools mandated as a condition to recognizing the paper certifications which I provided as attestation of the vaccinations.

79.    Both Assistant commissioner Crouch and Mr. Giovanetti are spinning this into vaccine fraud, when no fraud was ever contemplated or existed.

80.    Here the defendants themselves blocked my access to NYCCIR through their own failure to give me the credentials in 2006 and the subsequent unreported suspension in 2017 accompanied by continuous denial of access during 2017 and the present.

81.    The defendants here are double talking. The absurdity of their argument and the

20

loose use of the term "vaccine fraud" accompanied by grandstanding over the same  is evident form their own statements.  On one hand they are harping on my reporting duties pursuant to PHL §2168 and on my alleged failure to comply with the same, on the other hand they are obstructing access to the NYCIR which allows for those reports to be made and accuse me of attempting to report vaccinations which I administered through another physician's access to NYCIR.

82.     At ¶¶ 16 through 20 and then again at ¶ 25 Assistant Commissioner Crouch admits that the defendants "held up" my NYCIR application for no other reason than the fact that they received complaints from school nurses stating that the vaccines administered by me could not be verified in the NYCCIR and the defendants labeled this as "fraud".

83.     In this case the access to NYCIR was and continues to be deliberately obstructed by the City defendants for all pf the reasons articulated above.

84.     Finally, the Assistant Commissioner admits that the February 2024 NYCIR application was not processed also because unnamed individuals from the state department of health called to let the city defendants know that the state was conducting an investigation into my purported failure to report vaccines to NYCIR. See DE 39 at ¶ 39.Assistant Commissioner Crouch admits that the application remains on hold indefinitely and the defendants will not reach a determination regarding the application. See Crouch declaration at ¶ 26.

85.     Finally, while the Assistant commissioner references nonspecific DOHMH records which purportedly evidence both my previous access to CIR in 2006, and the suspension of access in 2017 due to non-reporting, the only document annexed to her declaration is an illegible printout with a circle around an illegible text which purported to document the status of my February 2024 application to the CIR as being "on hold".

86.     Conspicuously missing from the declaration are any documents which show that:

21

(i) the city defendants delivered to me through actual notice  access to the CIR  in 2006; (ii) any notice was given to me at any time of the admitted administrative suspension of the access in 2017 at either the  pre and or post suspension stage; (iii)  any formal order after a hearing directing the purported suspension of my CIR  access in 2017; (iv) any communication or notice at all related to City defendants' actions taken by them regarding my CIR access and the purported suspension of the same at any time; (v) the City defendants gave me  any sort of notice at any time that my 2024 application was on indefinite "administrative hold" due to any reason including those articulated in the Assistant Commissioner's declaration.

87.    Also conspicuously missing from Assistant Commissioner Crouch's declaration  is any explanation as to why all of a sudden in December 23, 2023, some 17 seventeen years after the fact, the City defendants decided to call my office to ask if I was actively vaccinating patients.

88.    Had the City defendants returned my calls in 2006 and immediately thereafter regarding my inquiries about the status of my then application for CIR access they would have and should have known that the reason why I did not report vaccinations to the CIR is not because of their wrongful assumptions and extrapolations but because they never gave me any notice of access and sign in credentials in the first place.

89.    It is very doubtful that almost 20 years after my initial application for CIR was submitted to the NYC DHMH any of the then persons in charge are still around working in the same position, let alone Assistant Commissioner Crouch.

90.    Indeed, Commissioner Crouch's declaration is not made upon her own personal knowledge of the facts but based upon the scouring of the CIR records (not annexed to her declaration for some unknown reasons) which purport to support the assertion that I did have access to CIR and never reported vaccines. As set forth above that was simply not the case.

22

91. The City defendants knew and should have known that I am actively vaccinating patients had they simply returned my calls either in 2006, at any period between 2006 and 2017 and right before or after they admittedly suspended my access to the CIR in 2017 which they never gave me to begin with.

86. Equally suspicious are the onslaught of purported school complaints which were From July 2023 through May 2024 which were admittedly based not upon my non vaccination of patients but upon the fact that the school nurses did not find the vaccinations reported in the NYCCIR. See Crouch declaration at ¶¶12, 13, 14 and 16. As stated above this situation was created by the City defendants themselves who in turn should have advised the school authorities of the that true reason why the vaccine reports were missing from the CIR is because the City defendants have systematically for almost two decades barred my access to the system without notice and opportunity to be heard.

87. Neither Commissioner Crouch nor investigator Giovanetti explain how my inability to report vaccines to CIR, which, as set forth above, was created by the deliberate obstruction and subsequent 2017 summary suspension of my access to CIR by the City defendants since 2006 and through their deliberate failure to act on my February 2024 application, rendered the paper certification fraudulent.

**(e)    Facts related to the statements made by State Department of Health Director of investigations Joseph Giovanetti in his declaration dated September 17, 2025.**

88. The statements Mr. Giovanetti's declaration dated September 17, 2025 DE 43 and submitted part in support of the former motion for preliminary injunction supports the instant action and the request for a mandatory preliminary injunction.

89. While the declaration addresses multiple presuppositions and theories of

unadjudicated and unproven vaccine fraud hypothesizes and unsubstantiated theories, it fails to address the elephant in the room.

90.    That elephant is the missing connection between the admitted separate duty to report vaccinations pursuant to PHL §2168 which was admittedly obstructed by the City defendants as discussed above and the automatic invalidation of paper certifications attesting to vaccinations as provided by Commissioner's own regulation 10 NYCRR §66-1.6.

91.    The head of the elephant is the simple question: "What statutory provision specifically empowers state investigators, or any state officials for that matter to unilaterally declare paper certifications as vaccine fraud, where reports of the same vaccines cannot be found in the NYCIR database.?"

92.    The tail of the elephant is the question of "What happens to state officials who sacrifice public health and act without authority when they flagrantly and continuously violate healthcare practitioners' constitutional rights based upon presuppositions and hypothesis that are never heard or proven in formal hearings.?"

93.    As it can be seen from the memorandum of law, no statutory provision empowers a director of investigations or anyone else to invalidate paper certifications because the vaccines are not simultaneously reported to the NYSIIS or the NYCCIR.

94.    As it can be further seen from the memorandum of law, prior to posting on their website that vaccinations were necessarily provided in violation of Public Health Law by myself, EX 2 to Giovanetti declaration, an actual formal determination pursuant to PHL §12-a has to me made after notice, opportunity to be heard and a formal herring. None of that process ever took place in my case.

94.    Mr. Giovanetti himself admits at ¶13 in his declaration DE 43 that providing a paper

24

certification attesting to the administration of the vaccines as mandated by 10 NYCRR §66-1.6 and reporting the vaccines to CIR are separate requirements and are neither cumulative nor mutually exclusive.

95.     As it can be seen from the accompanying memorandum of law, there is no authority for invalidating paper records and certifications of vaccinations by administrative fiat for non-reporting the same vaccines to the to the CIR for any reason. Nor is there any authority to for instructing schools to reject paper records and certifications of vaccinations based upon unfounded suspicions of the investigator articulated at ¶31 of the Giovanetti declaration for any reason. See memorandum of law.

96.     I will now address the statements of Mr. Giovanetti's declaration as they pertain to the motion for a preliminary injunction

97.     In ¶¶3 through 7 of the declaration Mr. Giovanetti lists his resume. Although he is an attorney admitted to the practice of law for 13 years, admittedly, the only relevant qualifications and official position which he held is as an investigator for the DOH in various capacities from regular investigator to supervising investigator.

98.     At ¶¶8 through 15 Mr. Giovanetti recites the statutory provisions which mandate both the reporting requirements to the CIR of PHL §2168 and the mandatory vaccinations program of PHL §2164 . Mr. Giovanetti's incorrect legal conclusions of those provisions are discussed in the accompanying memorandum of law in support of this motion.

99.     At ¶¶16 through 23, Mr. Giovanetti  makes irrelevant allegations with respect to investigations and investigation results that do not concern me and are irrelevant to this case. These recitations should be respectfully disregarded by the Court because they have no relevancy to the reasons why the state defendants are being sued herein for inter alia injunctive relief.

100.    At ¶¶24 through 36 of the declaration Mr. Giovanetti purports to recite allegations related to his extrapolations, conjecture surmise and presuppositions which ultimately led to his directives to the City defendants to continuously bar my access to CIR without due process, notice or opportunity to be heard. The absurdity of these allegations must be addressed seriatim below. However, even if there was a smoking gun, which here admittedly there is none, as it can be seen from the memorandum of law, the state defendants still continue to violate my due process rights and restrict my practice of medicine by completely barring me from vaccinating my pediatric patients without any hearing and opportunity to be heard.

101.    Specifically, at ¶¶24-27, Mr. Giovanetti references both disciplinary orders which were addressed in the Amended Complaint and in this affidavit. He couches the expired orders in terms of an unsubstantiated inference and extrapolation that my prior disciplinary history is somehow relevant to this action and that he is still entitled to infer that vaccine fraud in the form described by Mr. Giovanetti at ¶31 of his declaration still continues to be in effect solely by the existence of the prior disciplinary orders and his own extrapolations.

102.    As it can be seen from the memorandum of law no statutory authority permits the state defendants to impute vaccine fraud based upon past disciplinary action where not restriction was ever imposed by the BPMC even in the orders themselves, on my ability to vaccinate pediatric patients.

103.    At ¶28 of the declaration DE 43 Mr. Giovanetti states that he became aware of non-specific "several reports" that "myriad vaccine certificates or other vaccine certifications signed by me were "flagged" by school personnel who questioned the validity of the certificates of vaccination prepared by me.

104.    However, as it can be seen from the Crouch declaration DE 39 at ¶¶12-16, the basis

26

for these "flagged" certifications and documentation was not because there was any proof that vaccines were indeed not administered or vaccine fraud.

105. Without exception, all of the complaints were based upon the fact that the school nurses could not verify the vaccinations documented by paper certification in the CIR system. As discussed above the missing information was due to  the City defendants systematic and active past denial and continued  denial of  my access to CIR since 2006 without any notice, opportunity to be heard and without holding any actual hearings and producing any formal orders supporting their due process violations in the form of the denial of access to CIR.

106. ¶ 29 of the Giovanetti  certification, states that Mr. Giovanetti  identified some patients of Janet Breen, a healthcare practitioner whose vaccine certifications were formally invalidated by official order of the Commissioner (EX 1 annexed hereto), who were subsequently vaccinated by me as documented by my own paper certifications.

107. To begin with I have no idea who those patients of Janette Breen are and that they were ever patients of Janette Breen. I did not know who Janette Breen was  until Mr. Giovanetti spoke about her in his declaration.

108. Second, the invalidation of Janette Breen's vaccinations of the unidentified patients has no relevancy or proven or shown connection to my alleged subsequent vaccination and production of certificate of vaccination in accordance with 10 NYCRR §66-1.6.

109. In effect what Mr. Giovanetti suggests is that because Janette Breen was formally adjudicated as a vaccine fraudster, my providing of bona fide vaccinations to these unidentified patients who unbeknownst to me Mr. Giovanetti says that are patients of Janette Breen, entitles him to an inference that I am a vaccine fraudster and further entitles him to take adverse action against my medical license  and restrict my medical practice in the manner stated in his

27

certification.

110.    As it can be seen from the memorandum of law, no legal authority supports this otherwise absurd position.

111.    Next at ¶30, Mr. Giovanetti learnt that I did not report vaccines to the CIR. He does not articulate that he never asked why I did not report vaccinations to the CIR and whether the NYC defendants ever actually gave me access to CIR or whether they deliberately obstructed my access to the same as discussed above. He assumes without any hearing, evidence, notice and opportunity to be heard  that my non reporting to CIR is due to vaccine fraud which in turn enables him to continuously take action against me by restricting my practice of medicine in the manner admitted by him in the declaration.

112.    ¶31 is the most telling of the extrapolations based upon Mr. Giovanetti acted and continues to act against me without authority and in continuous violation of my due process rights. In this paragraph Mr. Giovanetti surmises and extrapolates three conclusory, unsubstantiated unproven and unadjudicated hypotheses which are at the core of his actions taken in violation of my due process rights.

113.    One of the hypothesis is that I did provide vaccines to the patients as reflected in the paper certificates and records and I violated PHL §2168 mandatory reporting obligation. This extrapolation is based upon conjecture and surmise that the failure to report was occasioned by my knowing and willing failure to report the vaccines to the CIR and not upon denial of access to the CIR by the City defendants and the resulting and continuous blockage of access by their inaction in 2024 as set forth above. That extrapolation was simply not the case in reality for the reasons articulated above.

114.    Even if I willingly did not report vaccines to the CIR, which as discussed above, I

28

did not,  that is not one and the same as not providing the vaccines at all, which were proven by paper certificates.

115.    The other false extrapolation articulated in ¶31 is that I had not vaccinated the patients but completed fraudulent paper records reflecting that I did. Mr. Giovanetti offers nothing in support of this conclusory and bald accusation.

116.    The third unsupported and unadjudicated hypothesis is the conclusory allegation that there is a possibility that a combination of both reporting and false documents exist to substantiate vaccine fraud. Yet Mr. Giovanetti  fails to provide any documentation supporting these conclusory and inflammatory statements once again.

117.    Finally, Mr. Giovanetti concludes his unsubstantiated theories in ¶31 of his affidavit  with a "trust me when I tell you so" unsubstantiated statement. He contends that in his experience with other cases, he knows that some unidentified providers involved in vaccination fraud provide a mix of fraudulent and authentic vaccination records depending on what each of their patients (or clients) pays for. Conspicuously missing from this statement is any explanation or stated allegations on how Mr. Giovanetti's experience with past investigations and providers unrelated to me have any relevancy to the facts of this case and to my vaccination practices and the specific unidentified vaccinations which he ordered the schools to invalidate were indeed fraudulent.

118.    At ¶¶32 and 33 of the declaration, Mr. Giovanetti harps on the fact that I asked physician Eileen Darr MD to input into CIR the records of patients who were subjected by school authorities to denial of the paper certifications at the end of 2023. These facts are admitted, described and confirmed in Assistant Commissioner Crouch's declaration DE at ¶¶ 12-16. As it can also be seen from the Crouch declaration those complaints were based exclusively upon the

fact that school nurses could not find the vaccinations in the NYCIR database.

119.    As I have explained above, I did ask Eileen Darr MD to report to the CIR vaccinations of my patients who were subjected to school denial of my paper certifications because the school nurses were unable to confirm the vaccinations in the CIR system at the end of 2023. That request was made  due to the City defendants obstruction of my access to the CIR. The vaccines were administered by me and I did not have the ability to report them to the CIR because of defendants restriction of my access to the CIR. The request was not because I wanted to do something underhandedly. My version of the facts was indeed confirmed by Mr. Giovanetti's investigator when hen interacted with Eileen Darr. Giovanetti declaration at ¶33.

120.    In short on one hand Mr. Giovanetti freely and without notice and opportunity to be heard accuses me for violating PHL §2168 because I could not report vaccinations to the CIR because I was never given access to the same database. On the other hand he accuses me of vaccine fraud when I did try and report these vaccinations through a licensed physician who did have access to the CIR.

121.    It is hard to understand what it is that Mr. Giovanetti contends that constitutes the purported  fraudulent conduct based upon which he predicates his decision to summarily act against my license and restrict my practice of medicine indefinitely  in 2024 without due process.

122.    At ¶34 Mr. Giovanetti regurgitates what Commissioner Crouch said in her declaration. Namely he states that he received reports from the city defendants no later than October 2023 that the former defendants received reports from school nurses questioning the paper records provided by me. However, those reports were generated based upon the admitted fact that the nurses could not find the vaccines in the CIR database , not because there was any evidence that the vaccines were not administered. The reason why the CIR database did not have any

information regarding these vaccines is articulated ad nauseam above and it has to do with the City defendant's' wrongful conduct not mine.

123.   At ¶¶35 and 36 of his declaration, Mr. Giovanetti admits that it was him who directed the city defendants to once again obstruct my access to CIR by simply failing to act on my application.

124.   Until the time when I read Mr. Giovanetti's and Assistant Commissioner Crouch's declarations - DE 39 and 43 in September 2025,  it was unknown to me what the status of my 2024 CIR application was and why there was an obstruction of my access by the City defendants without communication. If nothing else, Mr. Giovanetti clarified that the reason was nothing else but his personal directive to the City defendants and the City defendants' taking their orders from the chief DOH state investigator without affording me any notice opportunity to be heard or formal hearing and without providing any type of a communication for the de facto denial of my due process rights regarding access to the CIR. See 35 and ¶¶36 of the Giovanetti declaration.

123.   Through the date of this declaration the defendants conspired and continue to conspire  with each other to continuously deprive me of my constitutional due process rights by continuously and in perpetuity obstructing and denying me access to the CIR without any authority and without any formal hearing or determination of the accusations contained in the Giovannetti declaration, in the declaration of Commissioner Crouch and on the posting described below.

   **(f)   The state defendants' posting and admitted administrative directives given to School officials to reject paper proof of all vaccinations provided to my <u>pediatric patients.</u>**

   **<u>(i)   In general.</u>**

124.   Before I discuss defendants' use of their "vaccine fraud" postings, the revised version of which is annexed as EX 2 to the Giovanetti declaration, which is in fact a de facto

continued license restriction and formal state action taken against me without due process, it is important to update the Court with facts relevant the motion for a preliminary injunction.

125. Since the commencement of the action, the state defendants updated their postings on the "vaccine fraud" website. A copy of the update posting is annexed as EX 2 to the Giovannetti declaration.

126. That posting provides in relevant part as follows:

Public Health Law requires that any provider who administers a pediatric vaccination to a person less than nineteen years of age report the vaccination to the New York State Immunization Information System (NYSIIS) or, in New York City, the Citywide Immunization Registry (CIR). **The Department of Health may determine that any vaccination administered, or purportedly administered, in violation of Public Health Law is invalid for purposes of satisfying New York's school vaccination requirements. Each of the providers listed below is either suspended from, terminated from, or otherwise without access to NYSIIS, CIR, or both. Schools may not accept "paper-only" records of pediatric vaccinations from these providers as of dates specified below, <u>as such vaccinations were necessarily administered in violation of Public Health Law.</u>** Schools are encouraged to check this list regularly for any updates and changes.

**Mark Nesselson, MD** – Is based in New York, NY and does not have access to either the Citywide Immunization Registry or the New York State Immunization Information System. **Paper-only records of vaccinations administered after 07/31/2024 from this provider must not be accepted.**

127. This posting is markedly different than the initial posting. It fixed the initial posting which said that my access to CIR was suspended. However, the posting adjudicates alleged violations of the public health law by decreeing without any notice, formal hearing, opportunity to be heard and a formal order that unspecified vaccinations administered by me "**<u>were necessarily administered in violation of Public Health Law.</u>".** As it can be seen from the memorandum of law determinations of violations of any section of the PHL has to be achieved through the formal process of PHL §12-a which encompasses the due process protections of the fourteenth Amendment of notice, opportunity to be heard, the conduct of a formal haring and the issuance of

a formal order of determination by the Commissioner.

128. The posting continues to place restriction upon my medical license and the practice of medicine because it prospectively and indefinitely  prohibits me from administering any vaccinations to my pediatric patients in perpetuity and without any formal adjudication on Mr. Giovannetti's unsubstantiated suppositions by prohibiting schools from accepting my paper vaccine certifications.

129. Clearly as a pediatrician, the continuous, perpetual and indefinite restriction imposed upon vaccinations coupled with the continuous known misrepresentation directly implying  that the vaccinations administered by me were officially found by the state defendants to be  in violation of PHL, when in fact no such formal finding was ever made, prospectively violates my constitutional due process rights as set forth in the accompanying memorandum of law.

130. The posting is a de facto prospective license restriction imposed without due process because it bars schools from accepting my paper certifications prospectively from July 31, 2024 onward without any end in sight. The posing acts as a de facto and block on my ability to have an unrestricted medical license without due process by blocking me from vaccinating patients and providing full medical services to them.

123. Finally, the posting also provides false information because it states that I do not have access to NYCIR since 07/31/2024 because I provided vaccinations in violation of public health law. However, this purported violation is admittedly  couched in terms of failure to report, which as discussed above was occasioned by City defendants' on actions.

### (ii)    **Mr. Giovanetti's characterization of the posting**.

124.    ¶¶ 37-53 of Mr. Giovanetti's declaration address the motion to quash subpoena.

Therefore these allegations will be addressed in my separate declaration in support of the motion to quash subpoena.

125.    At ¶¶ 54 through 62 of the Giovanetti declaration, the state director of investigations addresses the posting which is the subject matter of this litigation. All of these allegations will be addressed seriatim hereto.

126.    First, is the communication from my past attorney to Mr. Giovanetti referenced in ¶48 and attached as Exhibit 4 to the Giovanetti declaration. Like with all other declarations, the first time I have ever seen that email was upon reading the declaration and the exhibit attached on or about the filing date of September 17, 2025.

127.    Contrary to what Mr. Giovannetti characterizes the email to be, there is no consent given by my past attorney to prospective state administrative action or license restriction of any kind taken  without due process. Neither I nor my past attorney ever agreed to a determination and formal state action that was made and take subsequently by Mr. Giovanetti against me which was to declare me in violation of Public Health law and prohibit schools in perpetuity to accept my paper records, which the defendants are obstructing and denying my mandatory access to the NYCCIR.

128.    The only thing that is said in that email is that I assured attorney Koback that on July 31, 2024 I was not billing or vaccinating my patients. The statement on its face does not agree to a prospective block of my ability to vaccinate my patients without a hearing nor does it ever agree that I will not be vaccinating and providing my patients with paper records documenting my vaccinations past July 31, 2024.

129.    Nor could I have ever made such statements. As of July 31, 2024, through October 2024, as stated by Mr. Giovanetti in ¶ 52 of his declaration I continued to provide vaccinations to

my patients and provide paper records as I have been without any restriction since forever and continuously since 2006 when the defendants content that I did have access to the CIR which they never provided to me.

130.    I had no reason to stop vaccinating my patients because not even the disciplinary orders – annexed to the Amended Complaint as DE 49-4 and 49-5 ever provided any restrictions on my license or prohibition against vaccination and documentation of the same by paper certificates.  Consequently, Mr. Giovanetti's interpretation of the Koback statement of July 31, 2024 as some sort of an admission that I will stop in the future to provide vaccinations and agree to my  perpetual license restriction without due process is a red herring.

131.    Similarly, neither is Mr. Giovanetti's surprise to receive paper records past July 31, 2024 proof of anything. It is just his understanding of what he though was going on without any formal process.

132.    The fact that Mr. Giovanetti wrote to my ex attorney that on October 25, 2024 – ¶ 52 stating that I continued to provide vaccinations and paper record similarly is not dispositive of anything nor is it surprising. I never agreed to stop vaccinating my patients and provide them for proper school records of vaccination which I have done my entire career. To the best of my knowledge, there was no restriction of my license by either the 2007 BPMC order  the 2011 Order which prohibited me from administering vaccinations and providing paper records.

**(iii)    The posting and the notice given to the schools as admitted by Mr. Giovanetti.**

133.    In paragraph 21 Mr. Giovanetti explains the initiation of the posting page titled "School Vaccination Fraud Awareness" as follows - EX 2 to the declaration DE 43-2

21. On September 5, 2024, DOH created a devoted page on the section of its website relating to Childcare Programs, Schools and Post-secondary Institutions, entitled "School Vaccination Fraud Awareness," to aid in schools' compliance with PHL § 2164.   DOH and 5F **schools routinely use this website as the primary and most reliable way of**

**alerting schools as to fraudulent immunization records**. The page is updated as necessary to provide relevant information. Annexed as Exhibit 2 hereto is a true and accurate copy of a printout of the current DOH website page.

134.    However, as it can be seen from the memorandum of law, that is not what the site does. While initially the site or its predecessor was or might have been used to alert schools of adjudicated cases and formal orders or decisions of the Commissioner issued after constitutional due process in the form on notice and opportunity to be heard and either the holding of an actual or an agreed formal order, EX 2 annexed to Mr. Giovanetti's declaration the contrary of that.

135.    In fact the postings is  used as formal governmental action to label healthcare practitioners such as myself, as vaccine fraudsters and misrepresent that there was a formal finding that I am one of the many violators of  New York Public Health Law  without any notice, formal determination, formal hearing and opportunity to be heard.

136.    For example the posting states in relevant part as follows See DE 43-2: "**Schools may not accept "paper-only" records of pediatric vaccinations from these providers as of dates specified below, <u>as such vaccinations were necessarily administered in violation of Public Health Law.</u>**" This is pure adverse governmental action taken without due process. See memorandum of law.

137.    For all of the reasons articulated in the accompanying memorandum including the above example, the posting site that went up supposedly in September 5, 2024 is nothing more or less than a tool to bypass constitutional due process and subvert judicial scrutiny.

138.    At ¶55 Mr. Giovanetti states that somehow due to the fact that I was not reporting vaccinations to the CIR, the state defendants have a right and the powers to direct schools to reject my paper vaccinations simply because paralleling reports documenting the vaccines in the CIR do not exist. As it can be seen from the memorandum of law, that legal conclusion is incorrect. While

36

Mr. Giovanetti cites in his declaration a lot of statutory provisions to support his allegations, conspicuously missing from this statement made in ¶55 is the statutory provision which vests the state defendants, and especially state investigators with powers to invalidate paper records and certificates mandated under PHL §2164 when the reporting requirements of PHL §2168 are not met.

139.    As it can be seen from the memorandum of law, neither one of the statutes provide what Mr. Giovanetti proposes. As Mr. Giovanetti recognizes, the requirement to provide paper certifications of vaccines is separate and apart from the reporting requirements of PHL §2168 to the CIR. Neither one of the statutes provide that in case of non-reporting the defendants can invalidate paper certifications and direct schools not to accept the same.

144.    At ¶56 through 58 Mr. Giovanetti explains the reasons for picking the July 31, 2024 as the cutoff date for telling school districts to reject my paper certifications. At ¶ 56 Mr. Giovanetti states that one of the reasons why he decided to pick the cutoff date by when the schools were instructed to reject my paper records is that because I never reported vaccines to the CIR, the state defendants did not have an understanding of the volume of the paper only records that they needed to invalidate due to non-reporting to the CIR, "with potentially tens of thousands of students across New York being affected". This statement is clearly made upon what appears to be Mr. Giovanetti's erroneous assumption that an absence of CIR reporting equates and invalid paper certification and to vaccine fraud. As it can be seen from the memorandum of law that assumption is legally erroneous and made without authority.

145.    At ¶57, Mr. Giovanetti once again uses his experience with the Janette Breen matter to draw parallels and explain what happened in that particular case where the defendants invalidated vaccinations of 1500 known students. However, the Breen case had no relationship to

me or any of my circumstances. For starters in the Breen case, due process was followed, formal charges (notice) were filed and a formal order was issued by the Commissioner making actual formal findings of vaccination fraud committed by Breen herself based upon vaccinations which were never administered, not vaccinations which were not reported to the CIR. See Ex 1 hereto.

146.    Also at ¶57, Mr. Giovanetti once again harps on Mr. Koback's email communications discussed above.  As I stated above, those communications never stated that I will forego my unrestricted right to vaccinate my patients and to provide paper certification as proof of vaccinations  in accordance with PHL §2164 and Commissioner's own regulation 10 NYCRR §66-1.6.  See accompanying memorandum of law.

147.    At ¶ 57 Mr. Giovannetti contends that communications were made to my ex counsel that I was administering vaccinations "in direct violation of PHS 2168, which is what I had been doing without CIR access".

148.    As it can be seen from the memorandum of law however, Mr. Giovanetti's reading of PHL §2168 is in direct conflict with his own admission at that reporting vaccines pursuant to PHL §2168 to the CIR and administering vaccines and providing paper certifications pursuant to PHL §2164 and Commissioner's own regulations 10 NYCRR §66-1.6 are two different things which are neither related to each other, nor are they interdependent conditions precedent to the satisfaction of each separate statutory requirement. For example, so long as paper certifications are provided in accordance with PHL §2164 and 10 NYCRR §66-1.6, the authenticity of the vaccinations requirements of the said statute are fully satisfied. The requirement to report that same vaccination to PHL §2168 is a separate statutory provision which does not invalidate the actual vaccination and the paper certification and documentation of PHL §2164. See memorandum of law.

149.    As it can be further seen from the memorandum of law, neither one of the statutes provide that in the absence of CIR reporting under PHL §2168 the administered vaccinations and paper records completed and documented by paper records become invalid.        Clearly there is no provision known in New York law which permits Giovanetti to invalidate perfectly valid vaccines and paper records while the City defendants have been and are continuing to deny me access to the CIR by administrative fiat  which access is necessary for the reporting to take place. See memorandum of law.

151.    At ¶ 58 Mr. Giovanetti states that the decision to direct school districts to reject my paper records was based in part on my past disciplinary action. However, as stated above, neither the Order of 2007 DE 49-4  nor the Order of 2011 DE 49-5  ever restricted my license registration to prohibit me from vaccinating my patients.

152.    For a period spanning almost over twenty years since 2006 no state officials until Mr. Giovanetti ever took the position that I was violating the Public Health Law by providing vaccinations and paper certifications.

153.    In paragraph 59 of his affidavit Mr. Giovanetti draws conclusions of law regarding the purpose of PHL §2168 which are simply not in the statute. See memorandum of law.

154.    Simply put, the purpose of PHL §2168 is not, as Mr. Giovanetti states, to provide investigators of the department of health with unlimited powers to bar healthcare providers form vaccinating their patients while providing paper certifications regarding the same. The statute simply does not provide that in the absence of reporting to the NYCIR the state defendants can simply issue directives shutting down my vaccinations practices without so much as giving me notice of what I did wrong and opportunity to be heard on the allegations of purported violation of PHL §2168.

39

156.    The purpose PHL §2168 was not, like Mr. Giovanetti believes to give investigators powers to cross reference paper certifications issued pursuant to PHL §2164.  Nor was it to give the DOH investigators powers to libel bona fide healthcare practitioners as "incentivized unscrupulous providers who issue fake vaccination records under the radar without submitting such records to the CIR." In fact there was no documentation  or official findings offered by Mr. Giovanetti  that any such preposterous conduct was perpetrated by me at any time during or after the probation period.

158.    The purpose of PHL §2168  if fourfold as specifically is specifically specified in the statute under subsection (1). None of the four purposes cover what Mr. Giovanetti purports that the purpose of the statute is. See memorandum of law.

159.    Finally at ¶¶ 61-62 of the declaration Mr. Giovanetti acknowledges that the defendants took formal action against me on October 15, 2024 when they sent formal notices to school administrators and nurses, data reporters and others - EX 6. to Giovanetti declaration. The defendants admit that in that notice they misrepresented to school officials etc. that my inability to report the vaccines to NYCRR invalidates future paper records submitted by me. For all of the reasons articulated in the memorandum of law, it does not.

160.    Most importantly, until the state defendants disclosed for the first time the action that they took against me in October 15, 2024 through notices given to school districts to reject my paper certification,  I was unaware that because they failed to give timely notice of their final action, they subverted my due process rights to avail myself of post deprivation state remedies and challenge their action before the statute of limitations expired. See memorandum of law.

161.    While the state defendants dub their formal adverse action taken against me as "informational notice" the action was anything but informational. It was formal disciplinary action

which continues through this date against me since the restriction on my practice of medicine has never been lifted nor is there any intention to lift the same. See memorandum of law.

162.    In short, both the posting and the notice to the schools amount to continuous formal governmental action taken against me without due process as articulated in the memorandum of law.

163.    What is significant from all of the statements made by Mr. Giovanetti at ¶¶ 62, 57, 55, 40, 37, 31, 21,20, 19, 17, 16,15, 13, 12, 110, 10, 9 and 8, is the fact that the state officials appear and purport  to have acted and continue to act pursuant to specific statutory provisions, namely PHL Secs. 2164 and  2168, PHL §206 and commissioner's regulations10NYCRR Secs. 66-1.1, 66-1.3.

164.    As it can be seen from the memorandum of law when the state authorities purport to take action against me pursuant to a set statutory provision, they have to give me notice, opportunity to be heard and a hearing as a precursor to my having to avail myself of state post deprivation constitutional remedies. In this case no such notice opportunity to be heard or a hearing was given to me before or after the state authorities acted and continue to act against me.

165.    No such notice opportunity to be heard or hearing was ever afforded to me.

**(iv)    The prospective impact of defendants' formal actions taken
<u>against me without due process.</u>**

166.    The continuous impact that defendants actions set forth above on my practice of medicine is the direct restriction of my medical license without due process and the taking of my right to practice medicine without restrictions. i have a pediatric practice and providing vaccination services to my pediatric patients is and was always an integral part of the practice.

168.    Since November 2024 when  first learnt from my patients that schools no longer

accept my paper certificates I was constrained to stop vaccinating my pediatric patients based by enlarge on what appeared to be Mr. Giovannetti's' unproven and unadjudicated presuppositions and extrapolations made without any proof, notice and opportunity to be heard and a formal hearing and post hearing determination.

169.   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and I am aware that if any of the statements herein are knowingly false, I will be subject to punishment.

Dated: November 11, 2025

Mark Nesselson MD

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 16th day of November 2025 I caused the within document to be served upon the respective defendants' attorneys specified below by filing the document with the Court's ECF system which in turn electronical served the within document on the following attorneys:

Rosemary Boller Esq.,
Assistant Attorney General
Office of the New York State Attorney General
Division of State Counsel  Litigation Bureau
28 Liberty Street
New York, New York 10005
Rosemary.Boller@ag.ny.gov

Pamela A. Koplik Esq.,
Senior Counsel
New York City Law Department
Administrative Law & Regulatory Litigation Division
100 Church Street, Room 5-157
New York, NY 10007
pkoplik@law.nyc.gov

 Oliver Paprin Esq.,
New York City Law Department
Administrative Law & Regulatory Litigation Division
100 Church Street, Room 5-157
New York, NY 10007
opaprin@law.nyc.gov

Dated: November 16, 2025

*/s/ Jacques G. Simon*

5

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN
-----------------------------------------------------------------------X
MARK NESSELSON M.D.

                                   Case No.: 1:25-cv-04464 JLR


                   Plaintiff,              **PLAINTIFF'S COUNSEL'S
DECLARATION
PURSUANT TO 28 USC §1746
IN SUPPORT OF MOTION FOR
A PRELIMINARY INJUNCTION
PURSUANT TO FED. R. CIV.
PROC. 65.**


                       -against-

James McDonald MD in his official
capacity as Commissioner of NYS
Department of Health; Joseph A. Giovannetti
in his official capacity as Director of Bureau
of Investigations NYS Department of Health;
Michelle Morse M.D. in her official capacity
as Commissioner of the New York City Dept.
of Health and Mental Hygiene; New York City
Department of Health and Mental Hygiene,

                     Defendants.
-----------------------------------------------------------------------X
       COMES NOW the Plaintiff's counsel Jacques G. Simon    and submits this declaration

pursuant to 28 U.S.C. §1746 in support of  Plaintiff's motion for a mandatory and prohibitive

preliminary injunction pursuant to Fed. R. Civ. Proc. 65.

       1.     I am  the Plaintiff's attorney  in this action and as such I have personal knowledge

of all of the facts and circumstances pertaining to this litigation.

       2.     I submit this declaration pursuant to 28 U.S.C. §1746 in support of  Plaintiff's

instant motion for a mandatory and prohibitive injunction, as set forth in the accompanying Notice

of Motion and supporting memorandum of law filed simultaneously herewith.

3.      During the first round of submissions predating the filing of the Amended Complaint at DE 38 and DE 44, counsel for both sets of defendants referenced and attached Magistrate Tiscione's report and recommendations and the final order of the US District Court EDNY in the case of *Khan v. Mc Donald* case No. 2:24-cv-04745 suggesting that the Khan case is similar to the present one and this Court should follow decision.

4.      I am the attorney of record for Dr. Khan in that case and I am personally and fully familiar with the same. Magistrate Tiscione nor Judge Azrack's Order in that case are neither persuasive nor binding authority regarding the facts and issues particular to this case for several reasons.

5.      First and foremost, that case is now on appeal to the Second Circuit and a briefing schedule has been set by the clerk. The docket number for the case on appeal is 25-2550. The appeals case can be accessed through PACER. Therefore while Judge Azrack's decision adopting the magistrate's recommendations for dismissal is final for the purposes of appeal, it is not final for the purposes of disposing of the issues in that case until the Second Circuit rules on the appeal.

6.      Second, the case is represented by defendants' counsel as similar to this one while in fact it is nothing close to being similar.

7.      For starters the Khan case did not involve at all the factual history of this case which involves City defendants' systematic history of continuous obstruction without due process of plaintiff's access to City Immunization Registry since 2006. See Plaintiff's affidavit in support of motion for preliminary injunction. It also did not involve the current denial of Plaintiff's access to CIR by City defendants purported indefinite administrative hold on plaintiff's application for access of February 2024 and sate defendants' directives to the City defendants to place the application in such indefinite hold while denying Plaintiff's access to the CIR without due process.

In short, the issues related to the City defendants' prospective and perpetual denial of Plaintiff's access to the CIR by administrative fiat and Plaintiff's property interest in that access (memorandum of law) have never been adjudicated or even considered in Khan at all. See defendants' submissions of the Magistrate's report and recommendations and Judge Azrack's order adopting the same. See Khan Amended Complaint DE 16; Motion for preliminary injunction DE 40; Letter motion to supplement briefings and submit an amended complaint DEV 55 ; R &R from magistrate Tiscione DE 58, Objections to R & R DE 62 and Fina Order DE 65.

8.      Similarly, state defendants' unconstitutional conduct and due process denial of Plaintiff's constitutionally protected rights through  the state defendants' posting regarding the Plaintiff in this case as well as the direct communications to the city school districts by the state defendants has never been addressed or adjudicated by the Khan Court who refused to hear Plaintiff's claims and application to amend the complaint to include the same allegations. DE 55, DE 58, DE 62 and DE 63.

9.      In short, none of the issues involved here in the motion for a preliminary injunction were ever addressed or adjudicated by either the magistrate of Judge Azrack in the Khan case, and in fact the complaint was dismissed without prejudice.

10.     For all of the foregoing reasons, defendants' joint pitch to the Court to consider the Khan decision in its making a decision in this case should be denied.

Dated: November 14, 2025

*/s/ Jacques G. Simon*

## CERTIFICATION OF SERVICE

I hereby certify that on this 16th day of November 2025 I caused the within document to be served upon the respective defendants' attorneys specified below by filing the document with the Court's ECF system which in turn electronical served the within document on the following attorneys:

Rosemary Boller Esq.,
Assistant Attorney General
Office of the New York State Attorney General
Division of State Counsel  Litigation Bureau
28 Liberty Street
New York, New York 10005
Rosemary.Boller@ag.ny.gov

Pamela A. Koplik Esq.,
Senior Counsel
New York City Law Department
Administrative Law & Regulatory Litigation Division
100 Church Street, Room 5-157
New York, NY 10007
pkoplik@law.nyc.gov

 Oliver Paprin Esq.,
New York City Law Department
Administrative Law & Regulatory Litigation Division
100 Church Street, Room 5-157
New York, NY 10007
opaprin@law.nyc.gov

Dated: November 16, 2025

/s/ Jacques G. Simon

5

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN
------------------------------------------------------------------------X
MARK NESSELSON M.D.

                                            Case No.: 1:25-cv-04464-JLR

                   Plaintiff,                  **<u>NOTICE OF MOTION</u>**

.

                   -against-

James McDonald MD in his official
capacity as Commissioner of NYS
Department of Health; Joseph A. Giovannetti
in his official capacity as Director of Bureau
of Investigations NYS Department of Health;
Michelle Morse M.D. in her official capacity
as Commissioner of the New York City Dept.
of Health and Mental Hygiene; New York City
Department of Health and Mental Hygiene,

                   Defendants.
------------------------------------------------------------------------X

SIRS/MADAMS:

      PLEASE TAKE NOTICE that upon the Amended Complaint dated October 6, 2025 DE

49 and the exhibits annexed thereto,  Plaintiff's declaration in support of motion for a preliminary

injunction pursuant to Fed. R. Civ. Proc 65 dated November 11, 2025, the declaration of counsel

Jacques G. Simon dated November 14, 2025  and the Memorandum of Law in support of Plaintiff's

motion for a Preliminary injunction pursuant to Fed. R. Civ. Proc 65, the Plaintiff by his

undersigned attorney will move this Court before Hon. Jennifer Rochon at the courthouse thereof

located at 500 Pearl Street, New York, NY 1007, Courtroom 20B at a date and time to be affixed

and assigned by the judge for the following relief pursuant to fed. R. Civ. Proc. 65 for  a mandatory

preliminary injunction and a prohibitive preliminary injunction in the form and substance set forth

in the Verified Complaint namely: (a) a mandatory injunction pursuant to Fed. R. Civ. Proc. 65

directing the City defendants Michelle Morse M.D. in her official capacity as Commissioner of the New York City Dept. of Health and Mental Hygiene and New York City Department of Health and Mental Hygiene (hereinafter "City defendants"), their agents, servants and assigns to process Plaintiff's application for access to the NYC Immunization Records ("NYCIR") in accordance with public health law Sec. 2168 and the jurisprudence cited in the Memorandum of Law based on the grounds that continuous and prospective denial of the same access to the NYCIR under the facts of this case amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment; (b) a mandatory injunction pursuant to Fed. R. Civ. Proc. 65 directing the state defendants, their agents, servants and assigns to remove Plaintiff's name and information posted in defendants' official web site at https://health.ny.gov/prevention/immunization/schools/fraud.htm because the posting violates and prospectively continues to violate Plaintiff's Fourteenth Amendment due process rights as set forth in the Amended Complaint and the accompanying memorandum of law; (c) a mandatory injunction pursuant to Fed. R. Civ. Proc. 65 directing the state defendants James McDonald MD in his official capacity as Commissioner of NYS Department of Health and Joseph A. Giovannetti in his official capacity as Director of Bureau of Investigations NYS Department of Health ("state defendants"), their agents, servants and assigns to revoke their directives given to school districts and other entities through their posting at https://health.ny.gov/prevention/immunization/schools/fraud.htm and through email communications which directs that the same school districts reject Plaintiff's vaccination records and to affirmatively mass mail official notices to all school districts in the state and city of New York advising them that the foregoing instructions have been revoked based upon the grounds stated in the Amended Complaint and in the accompanying memorandum of law and based upon

2

the fact that State  Defendants' continuous directives given on their web site violate Plaintiff's Fourteenth Amendment due process rights; (d) a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 prohibiting the state defendants their agents servants and assigns from blocking Plaintiff's access to NYCIR by administrative fiat and without due process because under the facts of this case this continued action amounts to a continuous violation of Plaintiff's due process under the Fourteenth; (e) a prohibitive preliminary injunction prohibiting the state defendants from continuing to maintain the posting regarding the Plaintiff on their official web site at https://health.ny.gov/prevention/immunization/schools/fraud.htm based upon the fact that such continued posting amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment; (f) a prohibitive preliminary injunction prohibiting the state defendants from continuing to direct school districts to reject Plaintiff's vaccination records for all of the reasons articulated in the Amended Complaint, Plaintiff's declaration in support of the instant motion and accompanying memorandum of law  because such continuous actions taken by the defendants under the facts of this case posting amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment.

In support of this motion the Plaintiff submits the following: (a) The Amended Complaint and exhibits annexed thereto DE 49; (b) Plaintiff's declaration in support of motion for a preliminary injunction dated November 11, 2025 and documents referenced therein; (c) Plaintiff's memorandum of law in support of motion for preliminary injunction; (d) counsel's declaration in support of motion for preliminary injunction dated November 14, 2025.

TAKE FURTHER NOTICE that opposition papers if any shall be submitted pursuant to the Rules of the Judge assigned to the case or pursuant to scheduling agreed upon by the parties and approved by the Court.

Dated: November 14, 2025, 2025

Attorneys for the Plaintiff
Attorney for the Plaintiff
JACQUES G. SIMON ATTORNEY
AT LAW P.C.
*/s/ Jacques G. Simon*
Jacques G. Simon, Esq.,
200 Garden City Plaza Suite 301
Garden City, NY 11530
Bar No. JS 9212
Phone: (516)378-840
Fax:    (516)378-2700
Email: jgs@jacquessimon.com

4

## CERTIFICATION OF SERVICE

I hereby certify that on this 16th day of November 2025 I caused the within document to be served upon the respective defendants' attorneys specified below by filing the document with the Court's ECF system which in turn electronical served the within document on the following attorneys:

Rosemary Boller Esq.,
Assistant Attorney General
Office of the New York State Attorney General
Division of State Counsel  Litigation Bureau
28 Liberty Street
New York, New York 10005
Rosemary.Boller@ag.ny.gov

Pamela A. Koplik Esq.,
Senior Counsel
New York City Law Department
Administrative Law & Regulatory Litigation Division
100 Church Street, Room 5-157
New York, NY 10007
pkoplik@law.nyc.gov

 Oliver Paprin Esq.,
New York City Law Department
Administrative Law & Regulatory Litigation Division
100 Church Street, Room 5-157
New York, NY 10007
opaprin@law.nyc.gov

Dated: November 16, 2025

*/s/ Jacques G. Simon*

5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
MARK NESSELSON M.D.

                                                Case No.: 1:25-cv-04464 JLR

                        Plaintiff,

                          -against-

James McDonald MD in my official
capacity as Commissioner of NYS
Department of Health;Joseph A. Giovannetti
in my official capacity as Director of Bureau of
Investigations NYS Department of Health;
Michelle Morse M.D. in my official capacity
as Commissioner of the New York City Dept.
of health and Human Services; New York City
Dept. of Health and Human Services,

                          Defendants.
-----------------------------------------------------------------------X

====================================================================
**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A**
**PRELIMINARY INJUNCTION PURSUANT TO FRCP 65.**
====================================================================

# TABLE OF CONTENTS

**Content**                                                                **Page(s)**

INTRODUCTION ................................................................................................1

RELEVANT BACKGROUND ..........................................................................1

    (a)    Plaintiff's strict compliance with the mandates
of PHL Sec. 2164(5) and with Commissioner's
regulations 10 NYCRR Sec. 66-1.3 and 10 NYCRR Sec. 66-1.6 ..........................2

    (b)    PHL Sec. 2168 - and accompanying Commissioner's regulation
10 NYCRR Sec. 66-1.2...................................................................................5

        (i)    Purpose of the statute ..................................................................5

        (ii)    Establishment of the two centralized database reporting systems and
mandatory reporting requirements ................................................................

        (iii) Mandatory Reporting ....................................................................8

**ARGUMENT**

**POINT I**    **THE ELEMENTS NEEDED TO BE SHOWN TO EXIST
BY THE PLAINTIFF FOR MANDATORY AND A
PROHIBITIVE PRELIMINARY INJUNCTION TO ISSUE**............................8

        (i)    In general - preliminary injunction standard..................................8

        (ii)    The element of irreparable harm..................................................10

        (iii)    Likelihood of success on the merits.............................................11

        (iv)    Balance of equities must tip in Plaintiff's favor ..........................11

        (v)    Public interest element ..............................................................11

        (vi)

**POINT II**    **THE PROSPECTIVE VIOLATIONS OF PLAINTIFF'S
CONSTITUTIONALLY PROTECTED DUE PROCESS
RIGHTS BY THE CITY AND STATE DEFENDANTS**...............................12

        (i)    In general ..................................................................................12

        (ii)    Irreparable harm - continuous due process violations
occasioned by the conduct of the City Defendants......................13

        (iii)    Irreparable harm – continuous due process violations
Occasioned by the conduct of the State Defendants.....................19

**POINT III**    **THE PLAINTIFF HAS SHOWN A STRONG LIKELIHOOD
OF SUCCESS ON THE MERITS OF THE UNDERLYING
CASE AND THE PRELIMINARY INJUNCTION APPLICATION** ...........25

**POINT IV**  **THE BALANCE OF EQUITIES MILITATES IN FAVOR OF THE ISSUANCE OF MANDATORY AND PROHIBITIVE PRELIMINARY INJUNCTION** .................................................................................................26

**POINT V**  **THE PUBLIC INTEREST ELEMENT MILITATES IN FAVOR OF THE ISSUANCE OF MANDATORY AND PRELIMINARY INJUNCTIVE RELIEF**.................................................................................................27

CONCLUSION.................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apter v. HHS*,
  80 F.4th 579 (5th Cir. 2023) ...................................................................................21

*Bery v. City of New York*,
  97 F.3d 689 (2d Cir. 1996), cert. denied, 520 U.S. 1251, 138 L. Ed. 2d 174,
  117 S. Ct. 2408 (1997)............................................................................................10

*Boreali v. Axelrod*,
  71 N.Y.2d 1 (1984) ...........................................................................................24, 25

*Brandon v. City of New York*,
  705 F. Supp. 2d 261 (S.D.N.Y. 2010) ...................................................................10

*Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*,
  601 F.2d 48 (2d Cir. 1979)......................................................................................26

*Cash v. Cnty. of Erie*,
  654 F.3d 324 (2d Cir. 2011)....................................................................................10

*Charette v. Town of Oyster Bay*,
  159 F.3d 749 (2d Cir.1998).....................................................................................26

*Civil Liberties Union v. N.Y.C. Transit Auth.*,
  684 F.3d 286 (2d Cir. 2012)................................................................................9, 25

*Conde v. Town of Sharon*,
  421 Fed. Appx. 26 (2d Cir., 2100).........................................................................13

*Conn. Dep't of Envtl. Prot. v. OSHA*,
  356 F.3d 226 (2d Cir., 2004)..................................................................................10

*Dent v. West Virginia*,
  129 U.S. 114 (1889)................................................................................................12

*DiMartile v. Cuomo*,
  2020 U.S. Dist. LEXIS 150666 (N.D.N.Y. 2020) .................................................26

*Elrod v. Burns*,
  427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976).........................................10

*Giglio v. Dunn*,
  732 F.2d 1133 (2d Cir. 1984)............................................................................17, 18

iii

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
    922 F. Supp. 2d 435 (S.D.N.Y. 2013) ....................................................................11

*Grannis v. Ordean*,
    234 U.S. 385 (1914)..............................................................................................13

*Idlibi v. Burgdorff*,
    2024 U.S. App. LEXIS 15629 (2d Cir., 2024) ......................................................10

*Int'l Bus. Mach. v. Johnson*,
    629 F. Supp.2d 321 (S.D.N.Y. 2009) ...................................................................26

*Johnson v. Miles*,
    355 Fed. Appx. 444 (2d Cir. 2009) ................................................................10, 16

*Jolly v. Coughlin*,
    76 F.3d 468 (2d Cir. 1996).............................................................................10, 16, 26

*Kapps v. Wing*,
    404 F.3d 105 (2d Cir. 2005)...................................................................................12

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..................................................................................12, 13, 27

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018).............................................................................8, 9, 25

*Nat'l Cable Tel. Assn. v United States*,
    415 U.S. 336 (1974)..............................................................................................24

*New York Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013)............................................................................11, 27

Matter of *New York State Superfund Coalition, Inc. v. New York State Dept. of
    Envtl. Conservation*,
    18 N.Y.3d 289 (2011) ...........................................................................................23

*Nken v. Holder*,
    556 U.S. 418 (2009)..............................................................................................11

*O'Brien v. O'Brien*,
    489 N.E.2d 712, 66 N.Y.2d 576, 498 N.Y.S.2d 743 (1985)...................................19

*Packer Coll. Inst. v University of State of N. Y.*,
    298 N.Y. 184.........................................................................................................25

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)............................................................................25, 26

iv

*Sofinet v. INS*,
   188 F.3d 703 (7th Cir. 1999) ........................................................................................11

*Spinelli v. City of New York*,
   579 F.3d 160 (2d Cir 2009)...............................................................13, 14, 16, 17

*Statharos v. New York City Taxi and Limousine Comm'n*,
   198 F.3d 317 (2d Cir. 1999)...............................................................................10, 16

*Va. Office for Prot. & Advocacy v. Stewart*,
   563 U.S. 247, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011)........................................9

*Wang v. Office of Prof'l Med. Conduct N.Y. State Dep't of Health*,
   2007 U.S. Dist. LEXIS 117131 (E.D.N.Y. 2007)....................................................19

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir., 2020)......................................................................................9

*Ex parte Young*,
   209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)..................................................9

**Statutes**

PHL Sec. 12-a ....................................................................................... *passim*

PHL Sec. 2164 ........................................................................................2. 3, 22

PHL Sec. 2165(5)...........................................................................................21

PHL Sec. 2168 ....................................................................................... *passim*

PHL Sec. 2169 .........................................................................................7, 17

PHL Sec. 230 ....................................................................................21, 23, 24

Public Health Law §2164............................................................................. *passim*

Public Health Law § 2168........................................................................... *passim*

**Other Authorities**

10 NYCRR Sec. 66 ................................................................................. *passim*

Eleventh Amendment.......................................................................................10

Fourteenth Amendment ........................................................................... *passim*

FRCP 65.............................................................................................................1

https://www.nyc.gov/site/doh/providers/reporting-and-services/citywide
immunization-registry-cir.page.................................................................................................

## **INTRODUCTION**

This memorandum of law is submitted in support of Plaintiff's motion for a mandatory and prohibitive injunction pursuant to FRCP 65 against two defendants. The first set of defendants will be called and referenced herein collectively as the "State Defendants". They are identified as Defendant James McDonald MD, who is the Commissioner of Health of the New York State Department of Health and Joseph Giovanetti Esq., the director of investigations of the New York State Department of Health.  The second set of defendants will be called and referenced herein collectively herein as the "City Defendants". They are identified herein as the Defendant Michelle Morse MD, who is the New York City Commissioner of the New York City Department of Health and Mental Hygiene ("DHMH") and DHMH.

## **RELEVANT FACTUAL BACKROUND.**

For the purposes of the recitation of the correct and  relevant factual background the Court is respectfully directed to the following docket documents of record: (a) Plaintiff's declaration in support of motion for preliminary injunction dated November 11, 2025; (b)Declaration of Bindi Couch with attached exhibit dated September 16, 2025 DE 39 and 39-1; (c) declaration of Joseph Giovanetti dated September 17, 2025 DE 43 and exhibits  43-1 through 43-6; (d) New York Board of Professional Medical Conduct (BPMC) consent order of discipline #07-250 dated 11/14/2007 with attached probation terms DE 49-4; (e) BPMC modification consent  order dated 04/04/2011 further extending by 36 months the same  probation terms of the order of 2007 DE 49-5. The foregoing is annexed hereto by reference (not by resubmission).

The essence of this action and the application for preliminary injunction revolves around the provisions of Public Health Law ("PHL") Sec. 2168 and Public Health Law §2164. A summary of the provisions of both statutes is now in order because the defendants' apparent confusion with

1

the terms of the same led to their actions against the Plaintiff, and continued violations of due process are at the core of this action.

The two different and separate statutes impose independent obligations on healthcare practitioners who administer vaccines to school children in New York State and New York City. Absence of compliance with one statute does not invalidate actual compliance with the other statute. Similarly, compliance with one statute does not absolve a healthcare practitioner from complying with the other.

    **(a)    Plaintiff's strict compliance with the mandates
of PHL Sec. 2164(5) and with Commissioner's
<u>regulations 10 NYCRR Sec. 66-1.3 and 10 NYCRR Sec. 66-1. 6.</u>**

In general, PHL Sec. 2164 is the mandatory vaccination statute which provides that no child shall be admitted into schools without showing proof of mandatory vaccinations designated by the statute.  The obligation to have the children vaccinated is placed upon the guardian and parent of the minor child. PHL Sec. 2164(2). The statute lists by name the exact vaccines which must be administered and provides that parents or guardians must take the children to a healthcare provider to complete the required immunization.

At the center of the statute stands PHL Sec. 2164(5) which provides that " 5. The health practitioner who administers such immunizing agents against poliomyelitis, mumps, measles, diphtheria, Haemophilus influenzae type b (Hib), rubella, varicella, pertussis, tetanus, pneumococcal disease, meningococcal disease, and hepatitis B to any such child **<u>shall give a certificate of such immunization to the person in parental relation to such child.</u>**  PHL Sec. 2164(7) empowers school officials to exclude children from school if they do not provide the certificate required by PHL Sec. 21645). PHL Sec. 2164(8) provides for exemptions from

2

vaccinations as determined by a licensed physician. That part of the statute is not in issue in this lawsuit.

In addition, in accordance with the provisions of PHL Sec. 2164(10) the Commissioner enacted regulations which are relevant to the effectuation and implementation of the mandatory vaccination statute PHL Sec. 2164. These regulations are contained in 10 NYCRR Sec. 66-1.3 through 10 NYCRR 66-1.10.   The following are relevant to the present case regarding Dr. Nesselson's compliance with the mandates of PHL Sec. 2164(5):

1.      10 NYCRR § 66-1.3 titled "Requirements for school admission" provides in relevant part as follows: A principal or person in charge of a school shall not admit a child to school unless a person in parental relation to the child has furnished the school **with one of the following**: **(a) A certificate of immunization, as described in section 66-1.6(a) of this Subpart, from a health care practitioner or (b) from NYSIIS or the CIR, documenting that the child has been fully immunized according to the requirements of section 66-1.1 (f) of this Subpart**.

2.      10 NYCRR § 66-1.6 provides verbatim the following alternative but not cumulative forms of certifications.: The **certificate of immunization required in section 66-1.3(a) of this Subpart shall be prepared and signed by a health practitioner licensed in New York State and shall specify the products administered and the dates of administration**.".... A record issued by NYSIIS, the CIR, an official immunization registry from another state, an electronic health record, and/or an official record from a foreign nation **may be accepted as a certificate of immunization without a health practitioner's signature.** (Emphasis supplied).

In short, a licensed physician such as Dr. Nesselson is in compliance with the provisions of the mandatory vaccine administration statute PHL Sec. 2164(5) if he provides a "**certificate of immunization required in section 66-1.3(a) of this Subpart** which according to **10 NYCRR**

3

**Sec. 66-1.6  shall be prepared and signed by a health practitioner licensed in New York State and shall specify the products administered and the dates of administration**".  (Emphasis supplied).

There is no dispute here that the Plaintiff provided the certifications attesting to the vaccinations which he administered to school patients in full compliance with the mandates of PHL Sec. 2164 and Commissioner's regulations; *See* declaration of Bindi Crouch DE 39 at ¶¶ 12-16. The apparent concerted "complaints" received by the City Defendants between July 10, 2023 and May 2024 were not about the authenticity of the paper certifications or over evidence that the Plaintiff did not provide vaccinations to his patients.  The complaints were about the school nurse's inability to verify the information contained in the paper records vis a vis the centralized CIR database entry. Crouch declaration DE 39 at ¶¶ 12-16.

Plaintiff's inability to report vaccines to the CIR is at the core of this action as it was created and perpetually maintained by City defendants' actions and failure to act which have been barring Plaintiff's access to CIR since 2006 and are continuing to do so in perpetuity and without any judicial or administrative oversight. Plaintiff's declaration at ¶¶25-29 and ¶¶36-65.

Significantly, PHL Sec. 2164 does not require anything else from an administering physician, nor does it impose any other obligations upon Dr. Nesselson other than the obligation to provide certifications of the immunizations administered to his patients. Dr. Nesselson is therefore admittedly in full compliance with the documentation requirements of PHL Sec. 2164, attesting to the vaccinations which he administered and documenting the dates when they were administered.

Neither PHL Sec. 2164 nor the Commissioner's regulations make the validity of vaccine certificates contingent upon the reporting requirements of PHL Sec. 2168. Nor do they vest

4

investigators or staff of the City or State departments of health with powers to invalidate paper certificates and to direct schools to reject the same if a physician does not report the vaccines to the NYCIR.  Nor does Sec. 2168 provide any authority for the City defendants to simply refuse to process a CIR application by administrative fiat and without hearing.

However, as discussed in Plaintiff's declaration, that is exactly what the defendants have been and are continuously here doing without affording him any due process since 2006 and now prospectively and in perpetuity.

**(b)      PHL Sec. 2168 - and accompanying Commissioner's <u>regulation 10 NYCRR Sec. 66-1.2.</u>**

The following is a summary of the central relevant provisions of this statute.

**(i)      <u>Purpose of the statute.</u>**

The main purpose of PHL Sec. 2168 as stated in PHL Sec. 2168(1) is  (a) to collect reports of immunizations and thus reduce the incidence of illness, disability and death due to vaccine preventable diseases (b) establish the public health infrastructure necessary to obtain, collect, preserve, and disclose information relating to vaccine preventable disease as it may promote the health  and well-being of all children in this state; (c) make available to an individual, or parents, guardians....to    local    healthcare    authorities,    health    care    providers    and    their designees....immunization status of children; and (d) appropriately protect the confidentiality of individual  identifying  information  and  the  privacy  of  persons  included  in  the  statewide immunization information system and their families.

Mr. Giovanetti's understanding of the purpose of the statute as stated in his declaration DE 43 at ¶¶57-59 is therefore not controlling because it does not comport with the stated purpose of the statute and the mandate of the legislature for the commissioner.

**(ii)**    **Establishment of the two centralized database reporting systems and the mandatory reporting requirements.**

The statute establishes two databases for the reporting of vaccinations. They are the New York State Immunization Information System ("NYSIIS") and for providers administering vaccines in New York City - The City Immunization registry. See   PHL Sec. 2168(2)(b) and PHL Sec. 2168(2)(c). The statute also defines in relevant part the term "Healthcare provider"  as "any person authorized by law to order an immunization. Dr Nesselson is a healthcare provider as defined by the statute.

The obligations to create and maintain the two separate databases are delegated respectively to the State Commissioner of Health (in the instance of NYSIIS - PHL Sec. 2168(1)) and the NYC Commissioner of the Department of Health and Mental Hygiene ("DHMH") PHL Sec. 2168(6).

The healthcare providers who administer vaccinations to patients under 19 years of age in NYC Health care providers administering immunizations to persons less than nineteen years of age in the city of New York shall report, in a format prescribed by the city of New York commissioner of health and mental hygiene, all such immunizations to the citywide immunization registry. PHL Sec. 2168(3)(a). All vaccinations are to be reported within 14 days of their administration PHL Sec. 2168(3)(a). The state department of health does not establish and administer the CIR program. The Commissioner's regulation 10 NYCRR Sec. 66-1.2

To facilitate access to the CIR program, in the city of New York, the commissioner of the department of health and mental hygiene of the City of New York may maintain its existing registry consistent with the requirements of this section and shall provide information to the commissioner and to authorized users. PHL Sec. 2168(3)(a). 8. Access and use of identifiable

6

registrant information shall be limited to authorized users consistent with this subdivision and the purposes of this section. PHL Sec. 2169(8)(a) addresses the manner in which access is provided to the CIR system: (a) The commissioner shall provide a method by which authorized users apply for access to the system. For the city of New York, the commissioner of health and mental hygiene shall provide a method by which authorized users apply for access to the citywide immunization registry.

PHL Sec 2168(c) provides that "health care providers and their designees.... **shall have access to the statewide immunization information system**.... for purposes of submission of information about vaccinations received by a specific registrant, determination of the immunization status of a specific registrant....

There is a whole other list of "authorized users" specified in PHL Sec. 2168(d) who are not healthcare providers and who can seek access to the CIR and NYSIIS for the purposes specified in the same statute.  Those providers are listed again in 10 NYCRR Sec. 66-1.2(8)(i) through (xii)

Significantly, "[on]ly health care providers providing services to the registrant and State and local Department of Health staff may compile reports, read immunization information, enter immunization information and change immunization information...10 NYCRR § 66-1.2(d). The information required to be entered into the database pursuant to 10 NYCRR Sec. 66-1.2(c)(1) is more extensive than the information mandated to be reported on the paper certifications pursuant to 10 NYCRR Sec. 66-1.3, but it does not displace the paper certification of 10 NYCRR Sec. 66-1.3 and 66-1.6.

The method of reporting to the CIR - All data elements reported to NYSIIS or the CIR must be submitted electronically. 10 NYCRR Sec. 66-1.2(c)(2).  Consequently, sign-in credentials, account information and access to the CIR must be provided by the City Defendants after

processing Dr. Nesselson's application. Failure to provide sign in credentials and acknowledgement of acceptance to the CIR database is tantamount to an obstruction and denial of access. Failure to process Plaintiff's application for CIR submitted in 2024 is similarly a denial of access to the CIR by the City defendants. See Crouch declaration DE 39 at ¶¶ 12-26 and DE 39-1 See Plaintiff's declaration at ¶¶25-65.

**(iii)    Mandatory reporting.**

Under the provisions PHL Sec. 2168(3)(a), the Plaintiff is mandated to report to the CIR vaccinations administered to children under 19 years of age within 14 days of the administration. By necessity this mandates that access to the CIR be facilitated by the city defendants as discussed below.

## ARGUMENT

### POINT I
### THE ELEMENTS NEEDED TO BE SHOWN TO EXIST BY THE PLAINTIFF FOR A MANDATORY AND A PROHIBITIVE PRELIMINARY INJUNCTION TO ISSUE.

**(i)    In general - preliminary injunction standard.**

Courts refer to preliminary injunctions as prohibitory or mandatory. Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it. *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir., 2018) citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir. 1995) (internal citation omitted).

A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the

public's interest. *Id*. citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing "a clear or substantial likelihood of success on the merits." *Id*. citing N.Y. *Civil Liberties Union v. N.Y.C. Transit Auth*., 684 F.3d 286, 294 (2d Cir. 2012) (internal quotation marks omitted). *N. Am. Soccer League, LLC Inc*., 883 F.3d 32, 36-37 supra citing *N.Y. Civil Liberties Union* 684 F.3d 286, 294 supra.

Where the movant is seeking to modify the status quo by virtue of a "mandatory preliminary injunction" (as opposed to seeking a "prohibitory preliminary injunction" to maintain the status quo), or where the injunction being sought "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits, the movant must also: (1) make a "strong showing" of irreparable harm, and (2) demonstrate a "clear or substantial likelihood of success on the merits." *Yang v. Kosinski*, 960 F.3d 119, 127-128 (2d Cir., 2020).

Plaintiff may seek official capacity relief against a state official only to the extent that he alleges an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 254, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011) (citing *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)); Silva v. Farrish, 47 F.4th 78, 84 (2d Cir. 2022). In determining whether *Ex Parte Young* applies, "a court needs only to conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seek relief properly characterized as prospective." *Id.* citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (internal quotation

9

marks and citation omitted). Therefore, timing of the initiating event which causes the ongoing violation, and which occurred prior to the filing of the complaint is not dispositive of the Court's inquiry. In this case the Plaintiff has shown that defendants' actions are injuring him prospectively, indefinitely and into the future as discussed below.

Municipalities, unlike states, are not protected by the Eleventh Amendment. *Idlibi v. Burgdorff*, 2024 U.S. App. LEXIS 15629, *5 (2d Cir., 2024) citing *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) citing *Monell* 436 U.S. 658, 692, *supra* and *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). Therefore, the Eleventh Amendment constraints do not apply to the City Defendants.

### (ii)   The element of irreparable harm.

The alleged violation of a constitutional right triggers the finding of irreparable injury. *Conn. Dep't of Envtl. Prot. v. OSHA, 356 F.3d 226, 231* (2d Cir., 2004) citing *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). Because violations of constitutional rights are presumed irreparable, *Elrod v. Burns*, 427 U.S. 347, 373, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976), "the very nature of Plaintiff's allegations satisfies the requirement that it show irreparable injury. *Bery v. City of New York,* 97 F.3d 689, 694 (2d Cir. 1996), cert. denied, 520 U.S. 1251, 138 L. Ed. 2d 174, 117 S. Ct. 2408 (1997).]. An alleged violation of a constitutional right "triggers a finding of irreparable harm," Johnson necessarily satisfied the requirement that a party applying for a preliminary injunction show irreparable harm. *Johnson v. Miles*, 355 Fed. Appx. 444, 446 (2d. Cir. 2009) citing Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996); see also *Statharos v. New York*

10

*City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.").

As discussed below, there are many examples of irreparable harm caused by the defendants in this matter.

### (iii)    Likelihood of success on the merits.

In general, to be able to prevail on the merits at the preliminary injunction stage the Plaintiff does not have to show with certainty that he will win the case at the end of litigation t is not enough The Plaintiff does have to show that the chance of success on the merits be "better than negligible." *Sofinet v. INS*, 188 F.3d 703, 707 (CA7 1999) (internal quotation marks omitted). Consequently, "[m]ore than a mere 'possibility' of relief is required." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

### (iv)    Balance of equities must tip in Plaintiff's favor.

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,* 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (alteration in original) (quoting Tradescape.com v. Shivaram, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999). In this case the balance of the equities favors the plaintiff because without a preliminary injunction his due process rights to notice and opportunity to be heard will be forever barred and the defendants will continue to violate his constitutional rights in perpetuity by applying administrative fiat and bypassing the due process formalities and legal and constitutional accountability in their entirety.

### (v.)    Public interest element.

The public interest favors the issuance of a mandatory preliminary injunction preliminary injunction here because there is a public interest in avoiding violations of constitutional rights. *New York Progress & Prot. PAC v. Walsh,* 733 F.3d 483, 488 (2d Cir. 2013).

In addition, in this case it is in the public interest that children of families in New York state not be excluded from school and not be forced to administer additional vaccines than the ones already received without any evidence or proof of lack of vaccination and vaccine fraud and based solely upon defendant's postings on its web site of false information and unauthorized directives as set forth below.

## POINT II

### THE PROSPECTIVE VIOLATIONS OF PLAINTIFF'S CONSTITUTIONALLY PROTECTED DUE PROCESS RIGHTS BY THE CITY AND STATE DEFENDANTS.

### (i)    In general.

Under the well-established federal standard, there is ordinarily little question that due process requires notice and an opportunity to be heard. *See Kapps v. Wing*, 404 F.3d 105, 120 (2d Cir. 2005). And when official action is at issue, the government generally must hold a hearing *before* it deprives an individual of their property. *Cullen*, 2024 U.S. App. LEXIS 10564, *5-6, supra citing *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). This basic concept seems to be evading the City defendants who prospectively and continuously violate plaintiff's due process rights for the reasons articulated above.

The US Supreme Court held that "procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The Court consistently holds that some form of hearing is required before an individual is finally deprived of property interest. *Mathews*, 424 U.S. 319, 332, supra citing *Wolff v. McDonnell,* 418 U.S. 539, 557-558 (1974); Phillips *v. Commissioner,* 283 U.S. 589, 596-597 (1931). See also *Dent v. West Virginia,* 129 U.S. 114, 124-125 (1889).

12

The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Matthews* 424 U.S. 319, 332, supra citing *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id* citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) and *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

**(ii)    Irreparable harm - continuous due process violations
occasioned by the conduct of the City Defendants.**

In *Spinelli v. City of New York*, 579 F.3d 160, 168-169 (2d Cir 2009), the Second Circuit Court of Appeals explained that "to succeed on a claim of procedural due process deprivation under the Fourteenth Amendment -- that is, a lack of adequate notice and a meaningful opportunity to be heard -- a plaintiff must first establish that state action deprived him of a protected property interest. *Id* citing *Sanitation & Recycling Indus. v. City of New York,* 107 F.3d 985,995 (2d Cir. 1996).

To claim a violation of her right to due process, the Plaintiff must first establish that he had a constitutionally protected property interest at stake. *Conde v. Town of Sharon*, 421 Fed. Appx. 26, 27 (2d Cir. 2100). Property interests that are protected by the Due Process Clause of the Fourteenth Amendment are not created by that amendment; they are defined by "existing rules or understandings that stem from an independent source such as state law." *Spinelli,* 579 F3d 160, 168 *supra.* citing *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

When alleging property interest in a public benefit or a right and mandate conferred by statute upon the Plaintiff, he must show "a legitimate claim of entitlement" to such interest that is grounded in established law. *Id.*

The Second Circuit Court of Appeals has explained that "[w]hen alleging a property interest in a public benefit, the plaintiff must show a legitimate claim of entitlement to such interest that is grounded in established law." *Spinelli* 579 F.3d 160, 169 supra.

This [legitimate claim of entitlement] inquiry stems from the view that a property interest can sometimes exist in what is sought - in addition to the property interest that exists in what is owned - provided there is a legitimate claim of entitlement to the benefit in question. The analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision. *Id.* citing *New York State Prof'l Process Servers Ass'n v. City of New York,* 2014 U.S. Dist. LEXIS 115137, at *19 (S.D.N.Y. 2014) citing *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (citation omitted). "Usually, entitlement turns on whether the issuing authority lacks discretion to deny the permit, i.e., is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Id.* citing *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

The latter is the case here. The function of the City Defendants in issuing access to NYCIR to the plaintiff is non-discretionary and ministerial. PHL Sec. 2168(6) provides that: "In the city of New York, the commissioner of the department of health and mental hygiene of the City of New York may maintain its existing registry consistent with the requirements of this section and shall provide information to the commissioner and to authorized users. PHL Sec. 2168(8)(a) provides that "For the City of New York, the commissioner of health and mental hygiene shall provide a method by which authorized users apply for access to the citywide immunization registry." Granting access to the NYCIR to the plaintiff, a plenary licensed physician, is a mandatory requirement which does not call into question the discretion of the City defendants. See

14

PHL Sec. 2168. PHL Sec. 2168(5)(a) provides that "[a]ll health care providers and their designees... shall submit to the commissioner information about any vaccinee less than nineteen years of age and about each vaccination given after January first, two thousand eight. PHL§ 2168(8)(c) " provides that health care providers and their designees...shall have access to the statewide immunization information system (and NYCIR) .... for purposes of submission of information about vaccinations received by a specific registrant... 10 NYCRR Sec. 66-1.2 designates the plaintiff as a mandatory reporter with read and write access to the CIR of the purposes of reporting and correcting reports of vaccinations. Only state and local health departments have that clearance.

In short, the Plaintiff has an indelible statutory given right to have access to the NYCIR for the purposes of complying with the reporting mandates of PHL§ 2168(8)(c) and with the Commissioner's regulation 10 NYCRR Sec. 66-1.2 as set forth above.

In accordance with the provisions of PHL Sec. 2168, the City defendants set an online system for application process for the NYCIR and conditions to the applications. https://www.nyc.gov/site/doh/providers/reporting-and-services/citywide-immunization-registry-cir.page. In accordance with the protocols set forth by the City defendants the plaintiff applied for access to the NYCIR and received a confirmation number. Amended Complaint DE 49 at 66-68 and DE 49-3.   Notwithstanding the same, the City defendants admittedly continue to refuse to do that enjoined upon them by statute. See Plaintiff's declaration at ¶¶25-65 and Bindi Crouch Declaration ¶¶ 12-26 DE 39 and exhibit DE 39-1 annexed thereto.

The City defendants are now actively and in the future in violation of Plaintiff's due process rights because they are depriving him of his property interest in the access to NYCIR and the Plaintiff has shown a legitimate   claim of entitlement to such interest that is grounded in

established law, namely PHL Sec. 2168." *Spinell*, 579 F.3d 160, 169 supra.

In addition, the plaintiff has shown that the City Defendants' tasks in facilitating access to the NYCIR are ministerial and not discretionary. The City defendants are required to issue access to the NYCIR upon ascertainment that certain objectively ascertainable criteria have been met.", in this case Plaintiff's application met the credentialed requirements. *Id.* citing *Town of Ridgefield*, 170 F.3d 258, 263, supra. In this case no determination at all has been made by the city defendants on Plaintiff's application let alone make a finding that his application did not meet the objective requirements of the application itself. See Crouch declaration DE 39 at ¶¶12-26 and DE 39-1 annexed thereto.

For all the foregoing reasons the Plaintiff has shown that the City defendants are causing him continuous irreparable harm through their failure to act on his application for access to NYCIR which amounts to a deprivation without due process of plaintiff's property right in the benefit of his access to NYCIR. *Spinelli*, 579 F.3d 160, 169 supra. An alleged violation of a constitutional right "triggers a finding of irreparable harm," Johnson necessarily satisfied the requirement that a party applying for a preliminary injunction show irreparable harm. *Johnson v. Miles*, 355 Fed. Appx. 444, 446 (2d Cir. 2009) citing Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996); see also *Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)

The City defendants' reliance on Plaintiff's past disciplinary history (disclosed in the complaint DE 49 and DE 49-4 and 49-4 and in Plaintiff's accompanying affidavit)  as an excuse to deny Plaintiff's due process rights while "putting on hold" his application for access to the CIR - Crouch Declaration DE 39 at ¶ 10 is without merit and is a red herring. As it can be seen from plaintiff's affidavit at ¶¶7-19  and from DE 49-4 and 49-5, neither one of the orders of discipline imposed a restriction on Plaintiff's license which bars him from administering vaccines to his

16

patients and provide the paper documentation mandated by PHL Sec. 2164 and 10 NYCRR Secs. 66-13. and 66-1.6.

To the extent that the City defendants are relying on instructions purportedly given by the state health department (Mr. Giovanetti) on March 1, 2024 and on subsequent postings and directives given by the state department of health to school districts to reject Plaintiff's paper certificates for failure to report vaccines to the CIR, See Crouch declaration at ¶¶19-26 such reliance and actions taken by administrative fiat and the continuous denial of due process rights to a notice and opportunity to be heard amounts to a continuous violation of Plaintiff's due process rights *Giglio* 732 F.2d 1133, 1137 citing *Burtnieks v*, 716 F.2d 982, 987 supra.

To the extent that the City defendants are seeking to rely on the provision of PHL Sec. 2168(9) to argue that the Plaintiff does not have a due process right in the access to CIR under the legitimate claim of entitlement to such interest" inquiry *Spinelli* 579 F.3d 160, 169 supra, that statute is unavailing. The City defendants do not contend that they are using their discretion to reject plaintiff's application for access to CIR. In fact, the City Defendants admit here that they are refusing to process Plaintiff's application and putting it on indefinite administrative hold. Crouch Declaration at ¶26 DE 39. Second, the provisions of PHL Sec. 2169(9) is not applicable to mandatory reporters such as the plaintiff that shall have access to the centralized reporting database. PHL Sec. 2168(8).

As stated in Plaintiff's declaration at ¶¶25-68 the City defendants have been continuously violating Plaintiff's due process rights by denying his access to the CIR since 2006. Most recently, as admitted in the Crouch declaration DE 39, that violation continues prospectively and in perpetuity. First the City defendants contend that their records reflect that the Plaintiff had access to the CIR from 2006 through 2017, but he did not report any vaccines. Crouch Declaration at ¶¶7-

17

8. Yet, during that period they never provided the Plaintiff with any notice that access was granted, and they never provided the Plaintiff with any sign in credentials to the system. Moreover, then as now the City Defendants totally ignored Plaintiff's attempted communications with the City Defendants regarding the status of his 2006 CIR access application. Plaintiff's declaration at ¶¶25-67.

Because the CIR system by regulatory definition is an electronic online reporting system 10 NYCRR Sec. 66-1.2, without the sign in credentials the Plaintiff cannot access the system at all. Consequently, the City Defendants never provided the Plaintiff with any access to the CIR either between 2006 and 2017 or at any time thereafter. Plaintiff's declaration at ¶¶25-67. This was an issue which had to be discussed and fully disclosed to Plaintiff's practice monitor and probation officers from the New York State Office of professional medical Conduct during the six years of magnifying glass monitoring reviews of Plaintiff's vaccination practice, reports provided to the OPMC in accordance with the probationary terms of the disciplinary orders of 2007 and 2011 DE 49-4 and 49-5. He was assured by the OPMC officials that as long as he provided the paper certification in the format and form provided by the City defendants at that term there would be no problems with his continued vaccinations of his pediatric patients. This has been Plaintiff's vaccination practice through November 2024 without incident. Plaintiff's declaration at ¶¶25-67.

The City Defendants then contend that in 2017 they deactivated Plaintiff's access to NYCIR due to non-reporting. Crouch declaration at ¶8. Yet they never provided the Plaintiff with any notice and opportunity to be heard on this adverse governmental action. Plaintiff's declaration at ¶¶25-67. Once the City defendants supposedly granted CIR access to the Plaintiff in 2006, they had no statutory authority to deprive the Plaintiff of his constitutionally due process right in that access without due process. *Giglio v. Dunn*, 732 F.2d 1133, 1137 (2d Cir. 1984) citing *Burtnieks*

18

*v. New York*, 716 F.2d 982, 987 (1983). Yet they did find it important to make it a point that their records reflect that the Plaintiff never challenged this decision of which he was never made aware. Crouch declaration at ¶9. Plaintiff's declaration at ¶¶25-67.

To the extent that the City defendants continue to deny Plaintiff's access to the CIR based upon the 2017 administrative suspension effectuated without formal due process - Crouch declaration at paragraph 8 DE 39, this action is a continuous violation of Plaintiff's due process rights that must be enjoined as irreparable harm.

For all the above-mentioned reasons the City defendants' actions and failure to act are continuously and prospectively depriving the Plaintiff of his due process rights.

**(iii)    Irreparable harm - continuous due process violations
<u>occasioned by the conduct of the State Defendants</u>.**

It is undisputed that a professional license, such as a license to practice medicine, is a property interest. *Wang v. Office of Prof'l Med. Conduct N.Y. State Dep't of Health*, 2007 U.S. Dist. LEXIS 117131, at \*7 (E.D.N.Y. 2007) citing Donk v. Miller, 365 F.3d 159, 163 (2d Cir. 2004); *O'Brien v. O'Brien*, 489 N.E.2d 712, 716, 66 N.Y.2d 576, 586, 498 N.Y.S.2d 743, 747 (1985).

In addition, it is also undisputed that the Plaintiff has a property interest in obtaining access to the CIR for the purposes of compliance with the reporting requirements of PHL Sec. 2168. See discussion above.

In this case the state defendants are continuously depriving the Plaintiff of his property interest in his unrestricted medical license without due process because admittedly since July 2024 they are and have been restricting his unrestricted right to vaccinate his pediatric patients and proved school districts with paper certifications as mandated by PHL Sec. 2164. See Giovanetti declaration DE 43 in its entirety. The state defendants are continuously violating Plaintiff's due

process rights because they are purportedly instructing the City defendants to deprive Plaintiff of his due process right in the CIR access by "holding off" Plaintiff's CIR application indefinitely without a decision. See Crouch declaration DE 39 ¶¶19 and 26. The state defendants are further continuously violating Plaintiff's due process right by summarily instructing the NYC school districts without notice and opportunity to be heard given to the Plaintiff to reject Plaintiff's vaccination certificates because of his inability to report the same to the CIR and because his vaccinations are necessarily provided in violation of Public health law. See Giovanetti declaration DE 43 and EX 2 and 6 annexed thereto DE 43-2 and 43-6.

In order to avoid having to proceed with the constitutional due process steps of notice and opportunity to be heard and a formal hearing before restricting Plaintiff's medical license, admittedly in 2024 the state defendants devised a mechanism which bypasses the constitution, bypasses the formal due process mandates as codified in PHL Sec. 12-a, bypasses administrative and judicial scrutiny and deprives the Plaintiff in its entirety of his due process rights mandated by the US Constitution.

That bypassing device was admittedly launched on September 5, 2024. It is identified and dubbed as "a devoted page on the section of its website entitled "School Vaccination Awareness". The purpose of the bypassing device is characterized as the use of the web site " as a primary and most reliable way of alerting schools to fraudulent immunization records". Giovanetti Declaration DE 43 at ¶2.

However, the web site is anything but that. Instead it is a device by which the state defendants bypass due process by  declaring the Plaintiff is in violation of the Public Health Law without following the formal due process mandates of the Fourteenth Amendment and PHL Sec. 12-a of notice, opportunity to be heard, a formal hearing and a formal determination of violation

20

of the PHL by the Plaintiff. See DE 42-2.  It also declares the plaintiff as a healthcare provider

provide fraudulent vaccines. The web site also issues formal orders to school authorities to reject

Plaintiff's paper certifications from July 22, 2024, onward, thereby restricting Plaintiff's

unrestricted license registration which gives him the right to vaccinate his pediatric patients.

Giovanetti Declaration DE 43 and EX 2 thereto DE 43-2.

Federal Courts of Appeals have held such web site devices and the messages used on

websites by governmental entities to regulate the practice of medicine as being without authority

and unconstitutional. *Apter v. HHS*, 80 F.4th 579 (5th Cir., 2023).

Similarly, here, neither investigators of the Department of Health nor the Commissioner

can use their official web site to bypass the due process mandates of the US Constitution and the

codification of the same in PHL Sec. 12-a and to achieve permanent adjudicative results without

affording even one iota of due process to the Plaintiff. The Commissioner and the DOH

investigators are not the BPMC. They are not authorized to impose license restrictions on the

Plaintiff, a penalty reserved under PHL Sec. 230-a (3) solely for the BPMC after the exhaustion

of due process under PHL Sec. 230.

The state defendants reached out to school districts directly and purportedly issued a

written directive for them to prospectively reject from July 22, 2024, onward Plaintiff's paper

vaccine certifications which he has been providing legally pursuant to the mandates of PHL Sec.

2165(5) and regulations 10 NYCRR Sec. 66-1.3 and 66-1.6. Giovanetti Declaration DE 43 at ¶¶62

and EX. 2 thereto DE 43-2.

The state defendants also reached out to the city defendants and participated in their

deprivation of Plaintiff's due process rights regarding his access to the CIR by directing them to

"hold off" the processing of his CIR access application indefinitely under the guise of an investigation in progress. See Crouch declaration DE 39 at ¶¶ 19 through 26.

The reason given by the state defendants for their prospective deprivation of plaintiff's due process rights: failure to report vaccines to the CIR pursuant to PHL Sec. 2168 Giovanetti declaration in its entirety and exhibits annexed thereto - DE 43-2 (web posting) and DE 43-6 - communications to school districts. Other reasons articulated for state defendants' illegal and unconstitutional action which prospectively deprive the Plaintiff of his due process rights while prospectively restricting his medical license without due process: (a) complaints received by the city defendants from nurses - Giovanetti declaration at ¶¶55-62 and Mr. Giovanetti's investigative experiences unrelated to the Plaintiff, presuppositions, suspicions, undocumented and unproven accusations which were never adjudicated pursuant to the due process mandated of the Fourteenth Amendment or pursuant to PHL Sec. 12-a.

Akin to the city officials, the state officials purport to act and take governmental action against the plaintiff for violation of PHL Sec. 2168 and pursuant to established state procedure in violation of the terms of PHL Sec. 12-a and in violation of the provisions of PHL Sec 2164(5) and regulations 10 NYCRR Secs.66-1.3 and 66-1.6.

While the defendants undisputedly have the powers to pursue any violation of the PHL, including PHL Sec 2168 such enforcement and subsequent action must be formally achieved through the formal adjudicative process of the Fourteenth Amendment and the adjudicative process of PHL Sec 12-a which encompasses the protections of the Fourteenth Amendment. They cannot be achieved through summary postings and orders given by investigators and other agents of the state including the state defendants on their web site or in email communications in the absence of and as a substitute for the formal due process mandates of PHL Sec. 12-a.

22

Nonetheless, contrary to elementary principles of constitutional due process and contrary to the provisions of PHL Sec. 12-a, the state defendants did exactly that.

At the time when the posting took place, no contemporaneous adjudication of the Plaintiff as a vaccine fraudster pursuant to either PHL Sec. 12-a by the commissioner or pursuant to PHL Sec. 230 b the BPMC were in effect.

The New York Court of Appeals specifically stated that "Administrative agencies, as creatures of the Legislature within the executive branch, can act only to implement their charter as it is written and as given to them. An agency cannot create rules, through its own interstitial declaration, that were not contemplated or authorized by the Legislature and thus, in effect, empower themselves to rewrite or add substantially to the administrative charter itself". Matter of *New York State Superfund Coalition, Inc. v. New York State Dept. of Envtl. Conservation*, 18 N.Y.3d 289, 295 (2011) citing *Matter of Tze Chun Liao v New York State Banking Dept.,* 74 N.Y.2d 505, 510, 548 N.E.2d 911, 549 N.Y.S.2d. 373 [1989] [citations omitted]).

Moreover, neither the provisions of PHL Sec. 2168 nor any other provisions of the Public Health Law vest the state defendants with powers to restrict Plaintiff's license and practice of medicine by first excluding him by administrative fiat from the NYCIR and then decreeing and ordering without any type due process or adjudicatory proceeding held under PHL 12-a that schools must reject Plaintiff's paper only vaccine records.

As discussed above, the statute which the state defendants are purportedly enforcing, PHL Sec. 2168 does not limit proof of vaccination to NYCIR records. As discussed above the position that in order to be able to vaccinate pediatric patients and for vaccinations to be valid the Plaintiff has to show that both paper certificates and reporting to the CIR database is not only legally

incorrect and unsupported by either PHL Sec. 2168 or PHL Sec 2164, but it is directly contradicted by the provisions of 10 NYCRR Secs. 66-1.3 and 66-1.6 as discussed above.

State defendants' continuous prohibition against the acceptance of plaintiff's paper records attained by a simple post on defendants' official website and by email communications further continues to violate plaintiff's due process rights because it acts as a license restriction which cannot be imposed at all by the defendants without due process. *Mills*, 478 F. Supp. 2d 544, 549 supra citing Miller, 365 F.3d 159, 163 supra and citing *Barchi*, 443 U.S. 55, 64, supra and *Derbyshire*, 718 F.2d 352, 354 supra.

Moreover, a license and practice restriction is a formal penalty provided by the legislature in PHL Sec. 230-a(3) which is to be imposed by the Board of Professional Medical Conduct ("BPMC") only after the full array of due process protections of PHL Sec. 230 including notice, opportunity to be heard, full adjudication and a formal order of the BPMC are exhausted. The BPMC enforces violations of professional misconduct statute Education law Sec. 6530 and not of the Public Health Law. The state defendants who are charged only with enforcement of violations of the provisions of the PHL - see PHL Sec. 12-a have no powers or subject matter jurisdiction to impose license restrictions on the Plaintiff under PHL Sec. 230-a with or without due process adjudications under PHL Sec. 12-a.

The courts have previously struck down administrative actions undertaken under otherwise permissible enabling legislation where the challenged action could not have been deemed within that legislation without giving rise to a constitutional separation of powers problem. *Boreali v. Axelrod,* 71 N.Y.2d 1, 11 (1984) citing *Industrial Union Dept. v American Petroleum Inst., 448 U.S. 607, 645-646; Nat'l Cable Tel. Assn. v United States,* 415 U.S. 336, 341-42 (1974) and other citations. To the extent that the agency has built a regulatory scheme on its own conclusions

24

relevant to this case about the appropriate balance of trade-offs between expediency and the sacrifice of due process, it was "acting solely on [its] own ideas of sound public policy" and was therefore operating outside of its proper sphere of authority. *Boreali,* 71 N.Y.2d 1, 12 citing *Matter of Picone v Commissioner of License*s, 241 N.Y. 157, 162; *see*, *Packer Coll. Inst. v University of State of N. Y.,* 298 N.Y. 184, 191.

In this case, the state agency and the sate defendants  created their own sphere of administrative action which bypasses due process provisions of the Fourteenth Amendment and the formal process of  PHL Sec. 12-a, exceeds the agency's authority which calls for the enforcement of provisions of the Public Health Law and simply vest the defendants with authority to act without any accountability and without any due process at all.

The idea that investigators and state agents and even the commissioner can simply use a posting web site and emails to declare a healthcare practitioner as a vaccine fraudster and hold one out to the public as such in the absence of any formal order or due process is not only absurd but is unconstitutional.

## POINT III
### THE PLAINTIFF HAS SHOWN A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS OF THE UNDERLYING CASE AND THE PRELIMINARY INJUNCTION APPLICATION.

The Plaintiff has also met the clear and substantial test of a likelihood of success on the merits as required in cases in which a mandatory preliminary injunction is sought.  *N. Am. Soccer League, LLC.*, 883 F.3d 32, 36-37, supra citing *N.Y. Civil Liberties Union* 684 F.3d 286, 294, supra.

A movant is held to a heightened standard where "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York ex rel. Schneiderman*

25

*v.* Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 33-34 [2d Cir. 1995]). "When either condition is met, the movant must show a 'clear' or 'substantial' likelihood of success on the merits, . . . and make a 'strong showing' of irreparable harm, . . . in addition to showing that the preliminary injunction is in the public interest." Actavis PLC, 787 F.3d at 650 (internal citations omitted).

The showing of the existence of continuous constitutional violations perpetrated by all defendants exists, the requirement of strong showing of irreparable harm was met. *DiMartile v. Cuomo*, 2020 U.S. Dist. LEXIS 150666, at *28 (N.D.N.Y. 2020) citing *Donohue v. Mangano*, 886 F. Supp. 2d 126, 151-52 (E.D.N.Y. 2012). Violation of a constitutional right is considered "irreparable harm." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996) ("The district court . . . properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); see also, *Charette v. Town of Oyster Bay,* 159 F.3d 749, 755 (2d Cir.1998).

For all the forgoing reasons the Plaintiff met the likelihood of success test.

## POINT IV
## THE BALANCE OF EQUITIES MILITATES IN FAVOR OF
## THE ISSUANCE OF MANDATORY AND PROHIBITIVE
## <u>PRELIMINARY INJUNCTION</u>.

A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could be held." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp.2d 321, 333-34 (S.D.N.Y. 2009).

In this case, if a mandatory injunction is not granted, the Plaintiff will suffer immediate and continued irreparable harm through the continuation of defendants' violation of his Fourteenth and Amendment rights as set forth above.

The defendants will continue to restrict Plaintiff's license without due process, and the Plaintiff will not be able to vaccinate his patients and participate in the NYCIR program because he was shut down summarily and without authority by administrative fiat, without notice of the alleged conduct that caused the shut down and without opportunity to be heard. *Mathews* 424 U.S. 319, 333-348 citing *Wolff* 418 U.S. 539, 557-558 supra.

For all the foregoing reasons and all the reasons set forth above, the balance of equities test militates in favor of the issuance of a mandatory injunction and is prohibitive in the formal and substance set forth in the accompanying Notice of Motion.

**POINT V**
**THE PUBLIC INTEREST ELEMENT MILITATES**
**IN FAVOR OF THE ISSUANCE OF MANDATORY**
**AND PRELIMINARY INJUNCTIVE RELIEF.**

The public interest favors the issuance of a mandatory preliminary injunction here because there is a public interest in avoiding violations of constitutional rights. *New York Progress & Prot. PAC v. Walsh,* 733 F.3d 483, 488 (2d Cir. 2013).

In addition, in this case it is in the public interest that children of families in New York state not be excluded from school and not be forced to administer additional vaccines than the ones already received by the Plaintiff without any evidence or proof of lack of vaccination and vaccine fraud and based solely upon defendant's postings on its web site of false information and unauthorized directives as set forth above.

27

Moreover, it is in the interest of the public of the state of New York to have their children vaccinated by the pediatrician of their choice rather than split pediatric care between the Plaintiff and other healthcare practitioners whose license was not summarily restricted by the defendants to prevent the administration of vaccinations and the issuance of paper records attesting to the same.

## <u>CONCLUSION</u>

For all the reasons articulated above, plaintiff's motion for a preliminary and permanent injunction in the formal and substance set forth in the Notice of Motion should be granted in its entirety.

Dated: November 16, 2025

Attorney for the Plaintiff
JACQUES G. SIMON ATTORNEY
AT LAW P.C.
*/s/ Jacques G. Simon*
Jacques G. Simon, Esq.,
200 Garden City Plaza Suite 301
Garden City, NY 11530
Bar No. JS 9212
Phone: (516)378-840
Fax:    (516)378-2700
Email: jgs@jacquessimon.com

28

## WORD COUNT CERTIFICATION

I hereby certify that in accordance with the Court's rule of individua practice  I have used MS Word processing program of Microsoft Office 360 which indicates that the word count of this memorandum is 8528, excluding the caption, certifications and signature block. This count is below the maximum count set by the Court in its individual rules of practice,

Dated: November 15, 2025

*/s/ Jacques G. Simon*